FIRST-CITIZENS BANK AND TRUST COMPANY v. ACADEMIC
ARCHIVES, INC.

No. 7110SC218

(Filed 31 March 1971)

1. **Uniform Commercial Code § 22— seller's remedies — insolvency of the buyer — recovery of goods sold — secured creditor's right in buyer's inventory**

   Certain schools were not entitled to recover from an insolvent microfilming firm the bound volumes of periodicals that they had sold to the firm pursuant to a contract whereby the schools would receive microfilmed equivalents of the volumes in exchange for the bound volumes, the firm having failed to complete its delivery of the microfilmed volumes, where a secured creditor of the firm, upon the firm's default in the payment of its indebtedness, had timely intervened to protect its security interest in the inventory of the firm, which included the bound volumes. G.S. 25-2-702(2); G.S. 25-2-702(3).

2. **Uniform Commercial Code § 4— "good faith purchaser" — holder of perfected security interest**

   The holder of a perfected security interest in after-acquired property qualifies as a "good faith purchaser" under the code. G.S. 25-1-201(19); G.S. 25-1-201(32), (33); G.S. 25-1-201(44)(b)(d).

3. **Uniform Commercial Code §§ 16, 22— seller's remedies — rights of secured creditor of buyer — buyer's transfer of voidable title**

   The secured creditor of an insolvent microfilming firm had superior rights over certain schools in the firm's inventory, which included bound volumes of periodicals that the schools had delivered to the firm in exchange for the microfilmed equivalents of the volumes, notwithstanding the firm's title to the volumes might have been voidable as a result of the firm's misrepresentations to the schools concerning its solvency. G.S. 25-2-403(1)(d).

4. **Uniform Commercial Code § 70— secured transactions — classification of goods — inventory**

   The "inventory" of a microfilming firm included bound periodical volumes that had been sold to it for microfilming. G.S. 25-9-109(4).

5. **Uniform Commercial Code § 21— buyer's remedies — rights to the goods of an insolvent seller**

> In order for a buyer to recover goods which are in the possession of an insolvent seller, the seller must have become insolvent within ten days after the receipt of the first installment of the purchase price. G.S. 25-2-502(1).

APPEAL by claimant-intervenors from *Clark, J.*, 16 November 1970 Session, WAKE Superior Court.

This action was instituted by plaintiff to recover on a series of promissory notes executed by defendant (Archives) to plaintiff between 7 June 1968 and 19 February 1970, and for the appointment of a temporary and permanent receiver over Archives' assets. Plaintiff alleged that Archives was indebted to it in the sum of approximately $185,000 and that the indebtedness was past due. As security for the payment of the notes, plaintiff and Archives had entered into a security agreement whereby Archives granted plaintiff a security interest in "equipment, fixtures and furniture, all present and future inventory, products of debtor, present accounts receivable and all future accounts receivable." These items were described in a financing statement properly filed on 11 June 1968.

In addition to this suit, plaintiff, on another series of promissory notes, sued Micropress, Inc., a North Carolina corporation, (Micropress) which was commonly owned and managed from the same principal place of business in Raleigh as Archives. The security involved in the Micropress suit is not pertinent to a determination of this appeal.

Both actions were begun on 27 August 1970 and on the following day both defendant corporations were placed in temporary receiverships which were made permanent on 21 September 1970. Thereafter Augustana College, Sioux Falls, South Dakota; University of San Diego, San Diego, California; Westmar College, Le Mars, Iowa; and La Verne College, Pomona, California, filed motions and crossclaims in intervention. The motions were allowed and all claims were consolidated. These institutions alleged that they had been approached by a representative of Archives who made each a proposal whereby they would exchange certain bound volumes of periodicals for microfilmed equivalents of these volumes plus other periodicals reduced to microfilm to complete or enhance their library holdings.

The exchange plan was explained in a pamphlet which read in part as follows.

"*Exchange Plan:*

In order to acquaint you with Academic Archives Exchange Plan and to facilitate your taking the first step *now* towards alleviating your maintenance and storage problems, we will *without cost or charges to you,* consider exchanging your physical volumes of periodicals for their counterpart on microfilm. We will provide (upon request) the services of our experienced consultant to evaluate and recommend the most effective micro form apparatus for your personalized needs and possibly supply this equipment at a reduced cost to you—or at no cost."

The final agreement was reduced to a document prepared by Archives entitled "Proposal" which stated the number of volumes each college was to turn over to Archives and the number of microfilmed equivalents each was to receive. The dates of the agreement were from 9 March 1970 to 6 July 1970, and on or about those dates the volumes were turned over to Archives. The exchange agreement stated that "we hereby transfer unconditionally the above list of periodicals to Academic Archives, Inc." None of the schools reserved any security interest in the volumes nor requested a statement of solvency from Archives.

Subsequent to this transfer of volumes by claimant-intervenors they individually received anywhere from none of the promised microfilmed volumes to half of them, and in the crossclaim in intervention and motion for summary judgment they request return of the volumes given over to Archives.

In its consolidated Order and Judgment, the court found that there was no genuine issue as to any of the material facts, and that the facts were as stated above. It also made conclusions of law that the transfer of the volumes by each claimant-intervenor to Archives was a sale of goods; that title to the volumes passed to Archives upon their being turned over to it; that G.S. 25-2-702 was the section applicable to determination of the right of claimant-intervenors; that since time was allowed to Archives to make payment for the bound volumes Archives had received the volumes on credit; that no demand was made to reclaim the bound volumes within ten days after receipt by

Archives; that none of the writings tendered by Archives amounted to a written misrepresentation of solvency; that Archives had become insolvent prior to any attempted cancellation by any of the claimant-intervenors; that plaintiff is a secured creditor by virtue of its security agreement and financing statement and is a "good faith purchaser" whose rights to subject the goods formerly owned by the schools to a claim are superior to those of the schools. The court denied the claimant-intervenors the right to reclaim the volumes and left the cause open for further proceedings as to their respective damages. The claimant-intervenors appealed.

*Hatch, Little, Bunn, Jones & Liggett by William P. Few for plaintiff appellee.*

*Allen, Steed and Pullen by Arch T. Allen III for claimant-intervenors, appellants.*

BRITT, Judge.

The rights of the respective parties are determined by the provisions of the Uniform Commercial Code, Chapter 25 of the General Statutes of North Carolina.

[1] Appellants contend that under G.S. 25-2-703 (f) they could cancel their agreement with Archives and reclaim their bound volumes and that it was error for the court to conclude that G.S. 25-2-702 was the applicable Code section. G.S. 25-2-703 (f) is entitled "Seller's Remedies in General" and states that:

> "Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (section 25-2-612), then also with respect to the whole undelivered balance, the aggrieved seller may
>
> \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
>
> (f) cancel."

G.S. 25-2-702 (2) entitled "Sellers' Remedies on Discovery of Buyer's Insolvency" states that:

> "(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if

misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the 10 day limit does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay."

Official Comment 2, G.S. 25-1-106(2) states that "any right or obligation described in this Act is enforceable by court action, even though no remedy may be expressly provided, *unless a particular provision specifies a different and limited effect.* Whether specific performances or other equitable relief is available is determined not by this section but by *specific provisions* and by supplementary principles." (Emphasis added.)

Hawkland, a leading authority on the UCC, aids in the determination of the situation in which a seller who has already made delivery of the goods to the buyer seeks to recover the goods delivered.

"Normally, after the seller has delivered the goods to an accepting buyer, the remedy is an action for the price, and it is too late to retrieve the goods. The remedy of reclamation is an exception to this rule. * * * Subsection 2-702(2) provides a remedy of reclamation for cases of fraud based on misrepresentation of solvency." 1 Hawkland, *A Transactional Guide to the Uniform Commercial Code,* § 1.60 at 299.

The exclusiveness of G.S. 25-2-702(2) is very clear when the last sentence of that section is read. "Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay."

[2] Appellants' contention is that Archives received their books at a time when it was insolvent and that Archives made written representations of solvency within three months prior to delivery of the books. Appellants are bound by the Code section under which their factual situation belongs and in this case that section is G.S. 25-2-702(2). A determination of whether the written proposals of exchange made by Archives to the various appellants was a misrepresentation of solvency is not necessary for the reason that even if the conditions to bring appellants within G.S. 25-2-702(2) were present, it is clear that the rights

of third parties have intervened to cut off their right to reclaim the property. G.S. 25-2-702(3) states that:

"(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this article (Sec. 25-2-403). Successful reclamation of goods excludes all other remedies with respect to them."

It is evident from a reading of Sections (2) and (3) that the rights of certain people can intervene and cut off those of a seller who desires to reclaim his former property. It must be considered whether plaintiff's after acquired property clause in its security agreement results in its having priority over the seller of the goods in question. The favored category that plaintiff best fits is that of a "good faith purchaser." The good faith of plaintiff is not questioned by appellants; the Code describes "good faith" as "honesty in fact." G.S. 25-1-201(19). A "purchaser" is one who takes by purchase, and a "purchase" includes "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property." G.S. 25-1-201(33)(32). To the extent that "value" is important as a concept necessary to determine whether one is a "good faith purchaser," it is clear that one gives value for rights if he acquires them "as security for or in total or partial satisfaction of a preexisting claim" or for "any consideration sufficient to support a simple contract." G.S. 25-1-201(44)(b)(d). Therefore, the holder of a perfected security interest in after acquired property qualifies as a "good faith purchaser" so far as the definitions go.

[3] Appellants' contention that plaintiff's security interest could not have attached because Archives did not have "rights in the collateral" is without merit. It is true that Archives might have had a voidable title, if it had made fraudulent representations of solvency, but one with voidable title can transfer better title than he had. G.S. 25-2-403(1)(d). Several commentators have also concluded that the holder of a perfected security interest in after acquired property was a "good faith purchaser" whose rights were superior to a seller of the after acquired goods under G.S. 25-2-702(2). *The Marriage Of Sales To Chattel Security In The Uniform Commercial Code: Massachusetts Variety,* 38 B.U. Law Review 571, 580-581; Hawkland, *A Transactional*

*Guide To The Uniform Commercial Code*, p. 304; *Selected Priority Problems In Secured Financing Under The Uniform Commercial Code*, 68 Yale L.J., 751, 758.

[4] Appellants' contention that the court erred in its conclusion that the bound volumes in question were "inventory" rather than "equipment" is also without merit. According to G.S. 25-9-109 (4) goods are " 'inventory' if they are held by a person who holds them for sale or lease * * * or if they are raw materials, work in process or materials used or consumed in business. Inventory of a person is not to be classified as his equipment." Official Comment 3, G.S. 25-9-109 states that the principal test to be used to determine whether goods are "inventory" is whether or not they are held for *immediate or ultimate sale*. The parties to this action stipulated that Archives "engaged in the business of microfilming books, journals, records, and other like material and in buying and selling both microfilm records and printed material." It is manifestly clear that the bound volumes appellants sold to Archives are "inventory" in the hands of Archives.

[5] Appellants contend that they are "buyers" of the microfilm equivalents offered to be exchanged by Archives for the bound volumes and that as such they are entitled to recover any microfilm which was intended for them but which is now being held by the receiver. G.S. 25-2-502(1) is the applicable section and states that:

> "(1) Subject to subsection (2) and even though the goods have not been shipped a buyer who has paid a part or all of the price of goods in which he has a special property under the provisions of the immediately preceding section may on making and keeping good a tender of any unpaid portion of their price recover them from the seller if the seller becomes insolvent within ten days after receipt of the first installment on their price."

In order for the buyer to be able to recover the goods which remain in the possession of the seller after the seller has become insolvent, the several elements of G.S. 25-2-502 must be present. One of these is that the seller must become insolvent within ten days after receipt of the first installment of the purchase price.

> "Presumably, the seller cannot become insolvent prior to the receipt of the first installment of the purchase price or

eleven days after receipt of the first installment of the purchase price or on the very date of its receipt. He has to become insolvent within the given ten day period. * * * The language of Section 2-502 is rather explicit on this point and does not leave much room for interpretation. That is why * * * this right is rather illusory as far as practical application is concerned." 3 *Benders Uniform Commercial Code Service,* Sec. 14.03 (2) at 14-34.

In the case at bar the insolvency of the defendant occurred prior to the appellants' deliveries and not within ten days after delivery of the bound volumes; therefore, appellants cannot take advantage of the provisions of this section.

For the reasons stated the order and judgment appealed from is

Affirmed.

Judges CAMPBELL and HEDRICK concur.