In the Matter of MELVIN LIQUID FERTILIZER CO., INC., Debtor.

OHIO FARMERS GRAIN AND SUPPLY ASSOCIATION, Plaintiff,

v.

MELVIN LIQUID FERTILIZER CO., INC., Defendant,

and

Bancohio National Bank, Intervenor.

Bankruptcy No. 3–83–02681.
Adv. No. 3–83–0821.

United States Bankruptcy Court, Ohio, W.D.

March 15, 1984.

Frank M. Root, Dayton, Ohio, for plaintiff.

Robert H. Welch, II, Milford, Ohio, for debtor/defendant.

Dennis L. Patterson, Dayton, Ohio, for CIBA–GIEGY Corp.

Richard Boydston, Cincinnati, Ohio, for BancOhio Nat. Bank.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the Court is the Complaint in Reclamation of Plaintiff, The Ohio Farmers Grain and Supply Association, (the Seller), filed on December 13, 1983, pursu-ant to 11 U.S.C. § 546(c) and O.R.C. § 1302.76 (U.C.C. § 2–702). On January 9, 1984, BancOhio National Bank (the Bank) intervened, alleging that it has a security position superior to Plaintiff's interest. The Bank was added as a party defendant.

The matter has been submitted on facts as stipulated by the parties conformably to a pretrial conference held on 11 January 1984, and briefs as filed by Plaintiff on 21 February 1984; and, by Defendant Debtor-in-Possession on 29 February 1984 and Defendant Bank on 22 February 1984; and the case record judicially noticed.

A synopsis of the pertinent facts are, as follows:

Debtor-in-Possession, Melvin Liquid Fertilizer Co., Inc. (DIP), is in the business of storing and selling fertilizer and farm equipment in Southwest Ohio. For a considerable period of time before that period relevant herein, Debtor would purchase extensive quantities of liquid fertilizer from Plaintiff and store the fertilizer in storage tanks. The fertilizer was not stored so as to be identifiable as to its purchase date; rather, it was mixed with similar inventory regardless of purchase date.

On May 17, 1983, Debtor executed and delivered to the Bank a perfected security interest which provided for a floating lien covering Debtor's then-present and all after-acquired inventory.

On October 28, 1983, Debtor filed a voluntary Chapter 11 petition in this Court and continued to operate its business as Debtor-in-Possession.

For a period of ten days preceding November 2, 1983, Debtor, while insolvent, purchased on open account and picked up quantities of liquid fertilizer from Plaintiff. The purchase price of this fertilizer was $24,162.88. Debtor then stored this fertilizer in its tanks along with previously-purchased fertilizer.

On November 2, 1983, Plaintiff served upon Debtor's counsel a written demand for reclamation of this fertilizer. Receipt of this demand was acknowledged in writing by Debtor's counsel on the same day.

Plaintiff then instituted this action. Debtor remains in possession of the fertilizer in question.

No cash collateral order has, as of yet, been finalized herein.

The question to be decided by the Court is whose rights are superior: a seller reclaiming under O.R.C. § 1302.76 (U.C.C. 2–702) or a secured creditor with a perfected security interest in inventory (both present and after-acquired).

## DECISION

Conflicting case precedents have been studiously cited in behalf of the respective parties, from which they draw and argue different conclusions. For the sake of brevity the discussion of principles now to be applied as found in the decision in *Action Industries, Inc. v. Dixie Enterprises, Inc.* (Bkrtcy.Ohio 1982) 22 B.R. 855, 34 U.C.C. Rep. 550 are incorporated by reference and not reiterated herein.

The discussion on the facts *sub-judice* need only focus on and emphasize the differences in application of those principles from the perspective of a seller vis-à-vis the DIP as opposed to the perspective applicable to the prexisting perfected security interest. No issue has been presented on the facts as to whether or not the *res* as a practical matter can be physically and economically reclaimed from similar liquid fertilizer inventories on hand from other sources, or as to the monetary valuation of the inventory in possession of the DIP on the date of the Seller's demand for reclamation.

The Bank cites in urging denial of reclamation the well reasoned opinion in *U.S. Billiards Co., Inc. v. BancOhio National Bank,* 36 B.R. 699, recently decided by Bankruptcy Judge Newsome, Case Number 1–83–01743 in this District (January 19, 1984), but the Seller argues in response, as follows:

"The *U.S. Billiards* decision gives no consideration as to what rights the debtor has in the collateral under Ohio Revised Code Section 1309.15. It is the position of Ohio Farmers that during the ten-day period during which Ohio Farmers had the right to reclaim pursuant to Ohio Revised Code Section 1302.76, Melvin had no rights in the collateral, then the floating lien of BancOhio could not attach thereto, *In re American Food Purveyors, Inc.,* U.S.D.C., N.D.Ga., 17 U.C.C. Reporting Service, 436 (1974)."

The Debtor-Defendant concurs with the floating lien priority urged by the Bank, and "Further, even if Plaintiff would be upheld, it could only be granted an administrative claim subordinate to Intervenor's floating lien. [*citing In Re Davidson Lumber Company,* 22 B.R. 775, 776 (Bkrtcy.Fla. 1982) ]. Note, however, that no request for such alternative relief is before the Court, and as such could not be considered at this time . . . ."

Perhaps the *American Food Purveyors* case is distinguishable on the fact that apparently the secured party there had knowledge of the debtor's insolvent condition. If so, this court is of the opinion that knowledge of insolvency is not a determinative factor unless the secured party in a particular case had knowledge of such facts before perfection of the security interest. As was held in *Action Industries,* however, U.C.C. § 2–702 (Ohio Revised Code § 1302.76) expressly protects good faith purchasers or secured parties, and a secured creditor by statutory definition was held to qualify as both.

In any event, this court is constrained to disagree with *American Food Purveyors* to the extent it would place the burden of proving good faith upon the secured party and that it "had no knowledge or notice of American's financial plight, in order to prevail."

As pointed out by this court in *Action Industries,* the U.C.C. specifically addresses the interrelation between Articles Two (Sales) and Nine (Security interests). Furthermore, the U.C.C. specifically addresses the title question (buyer's interests) and limits the seller's ability to reservation of title when possession has been surrendered to the buyer. "Any retention or reserva-

tion by the seller of the title (Property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." Revised Code 1302.42(A) (U.C.C. 2–401).

The provisions of 11 U.S.C. § 546(c) nevertheless (if as herein timely and properly asserted in the bankruptcy courts) specifically constitutes a limitation on the rights and powers of the DIP; and, a court should deny reclamation to a seller as opposed to the buyer only if it grants a priority as an administrative expense or secures the claim by a lien.

Code § 546 should not be construed, however, to enhance the property interest of the DIP (or a trustee). *See In the Matter of Mel Golde Shoes, Inc.* 403 F.2d 658 (6th Cir.1968) and *In the Matter of Federals, Inc.,* 553 F.2d 509 (6th Cir.1977).

Recognizing that the inventory and proceeds are subject to the security interest of the Bank and that reclamation operates only *in rem,* the crucial date on the facts herein is November 2, 1983. This date qualifies the monetary limits of any court granted lien or administrative priority.

Within such parameters, the rights of debtor and unsecured creditors are subservient to the rights of a seller which is denied reclamation. The seller's rights should be subordinate only to the preexisting floating lien in priority, to the extent that the DIP converts in the operation of the business the collateral into encumbered cash proceeds. Furthermore, even though Section 546(c) of the Bankruptcy Code employs a disjunctive conjunction, referring to an administrative priority *or* securing the claim by a lien, the possible ramifications in any Chapter 11 case of a conversion to Chapter 7 administration must be anticipated. The Code requires cash payment of administrative claims on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). Administrative claims derive priority from 11 U.S.C. § 507(a)(1) and are defined by 11 U.S.C. § 503(b).

Since administrative claims are payable "on the effective date of the plan", which is not defined, the effective date is hereby deemed to be the date an order of confirmation of a plan of reorganization becomes final.

To the extent that payments are not received by the seller under a confirmed plan as an administrative expense, the use of the liquid fertilizer in the operation of the business of debtor should be secured by a lien on all estate property subordinate to the security interest of the Bank and cash collateral orders which may be granted by this court. It is not the intention of the court to impede the DIP's operation in the ordinary course of its business.

The judgment of the court is, as follows:

1. The request for reclamation is denied.
2. The claim of Plaintiff is granted an administrative expense priority, secured by a lien on the property of the estate.
3. The lien shall be subordinate to the existing security interest of the Banc-Ohio National Bank.
4. The administrative expense claim and lien granted, being noncontractual, will not bear interest.