In re FCX, INC., ID#: 56–0220040 Debtor.

The PILLSBURY COMPANY, Plaintiff,

v.

FCX, INC., Defendant,

and

Columbia Bank for Cooperatives, and the Committee for Unsecured Creditors, Intervenors.

MONSANTO COMPANY, Plaintiff,

v.

FCX, INC., Defendant,

and

Columbia Bank for Cooperatives, and the Committee for Unsecured Creditors, Intervenors.

ARCHER DANIELS MIDLAND COMPANY, Plaintiff,

v.

FCX, INC., Defendant,

and

Columbia Bank for Cooperatives, and the Committee for Unsecured Creditors, Intervenors.

CBP RESOURCES, INC., Plaintiff,

v.

FCX, INC., Defendant,

and

Columbia Bank for Cooperatives, and the Committee for Unsecured Creditors, Intervenors.

EXXON CORPORATION, Plaintiff,

v.

FCX, INC., Defendant,

and

Columbia Bank for Cooperatives, and the Committee for Unsecured Creditors, Intervenors.

UNION OIL COMPANY OF CALIFORNIA, Plaintiff,

v.

FCX, INC., Defendant,

and

Columbia Bank for Cooperatives, and
the Committee for Unsecured
Creditors, Intervenors.

TEXASGULF CHEMICALS
COMPANY, Plaintiff,

v.

FCX, INC., Defendant,

and

Columbia Bank for Cooperatives, and
the Committee for Unsecured
Creditors, Intervenors.

KEYSTONE STEEL & WIRE COMPANY, A DIVISION OF KEYSTONE CONSOLIDATED INDUSTRIES, Plaintiff,

v.

FCX, INC., and Columbia Bank for
Cooperatives, Defendants,

and

the Committee for Unsecured
Creditors, Intervenor.

Bankruptcy No. S–85–10574–5.
Adv. Nos. S–85–0302–AP, S–85–0367–AP,
S–85–0368–AP, S–85–0355–AP, S–85–
0373–AP, S–86–0021–AP, S–86–0020–AP
and S–86–0050–AP.

United States Bankruptcy Court,
E.D. North Carolina.

June 4, 1986.

John M. Reece, Lee, Reece, Weaver & Oettinger, Wilson, N.C., for Pillsbury Co.

Charles Robson, Jr., Foster, Conner & Robson, P.A., Raleigh, N.C., for Monsanto Co.

John M. Reece, Lee, Reece, Weaver & Oettinger, Wilson, N.C., for Archer Daniels Midland Co.

Sally A. Conti, Mount, White, King, Hudson & Carden, P.A., Durham, N.C., for CBP Resources, Inc.

Holmes P. Harden, Maupin, Taylor & Ellis, P.A., Raleigh, N.C., for Exxon Corp.

Holmes P. Harden, Maupin, Taylor & Ellis, P.A., Raleigh, N.C., for Union Oil Co. of California.

T. Carlton Younger, Jr., Sr. Counsel, Raleigh, N.C., for Texasgulf Chemicals Co.

Thomas W. Waldrep, Jr., Jacqueline R. Clare, Womble Carlyle Sandridge & Rice, Winston-Salem, N.C., for Keystone Steel & Wire Co.

A.P. Carlton, Jr., Sanford, Adams, McCullough & Beard, Raleigh, N.C., for FCX, Inc.

J. Larkin Pahl, Sp. Counsel, Smith, Debnam, Hibbert & Pahl, Raleigh, N.C., Howard Glassman, Philadelphia, Pa., for Columbia Bank for Cooperatives.

Lacy H. Reaves, Poyner & Spruill, Raleigh, N.C., for Unsecured Creditors' Committee.

Amos U. Priester, IV, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., for Debenture Holders' Committee.

## MEMORANDUM OPINION AND ORDER ALLOWING PARTIAL SUMMARY JUDGMENT

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the motion for summary judgment filed by defendant-intevenor, Columbia Bank for Cooperatives. A hearing was held in Raleigh, North Carolina on May 20, 1986.

The plaintiffs, The Pillsbury Company, Monsanto Company, Archer Daniels Midland Company, CBP Resources, Inc., Exxon Corporation, Union Oil Company of California, Texasgulf Chemicals Company, and Keystone Steel & Wire Company, each brought separate adversary proceedings seeking to reclaim goods sold to the defendant-debtor, FCX, Inc., pursuant to U.C.C. § 2–702 (N.C.GEN.STAT. § 25–2–702) and 11 U.S.C. § 546(c).

Columbia Bank for Cooperatives ("CBC"), the debtor's largest creditor with a lien on all of the debtor's assets, and the Committee for Unsecured Creditors were permitted to intervene as defendants; at the request of CBC, the adversary proceedings were consolidated. CBC filed a motion for summary judgment which is supported by the debtor and the Committee for Unsecured Creditors.

The motion for summary judgment presents two issues. First, does CBC's lien on all of the debtor's assets have priority ahead of the rights of the reclaiming sellers? Secondly, if CBC's lien does have priority, does it cut off all reclamation rights of the sellers?

There is no genuine dispute as to any material fact concerning the first issue, the

law is clear that a floating lien on inventory has priority over the rights of reclaiming sellers, and summary judgment in favor of CBC will be granted on that issue. There are, however, significant factual disagreements concerning the second issue, a reclaiming seller whose claim is inferior to that of a creditor's floating inventory lien does not automatically lose all of its rights under 11 U.S.C. § 546(c), and the motion for summary judgment on that issue will be denied.

FCX, Inc., a North Carolina farmers' purchasing and marketing cooperative, is a chapter 11 debtor in possession (11 U.S.C. § 1101(1)), having·filed a voluntary petition under chapter 11 of the Bankruptcy Code on September 17, 1985.

CBC is FCX's largest creditor with a prepetition claim of approximately $58,000,-000. CBC's claim is secured by a lien on all of the debtor's assets, including a "floating lien" on all of the debtor's inventory. The plaintiffs are eight of FCX's suppliers who seek to recover property that they sold to FCX pursuant to U.C.C. § 2-702 (N.C. GEN.STAT. § 25-2-702) and 11 U.S.C. § 546(c).[1] The amount of the goods sold by the reclaiming sellers aggregate $341,-481.31.[2]

Shortly after the case was filed, FCX and CBC entered into a cash collateral agreement (September 18, 1985) and a debtor in possession financing loan agreement (September 23, 1985). Both of these agreements not only provided postbankruptcy financing for FCX, but also contained provisions that established the perfection and priority of CBC's prepetition lien and purported to release any "setoff, deduction, defense or counterclaim," which the debtor had against CBC. All creditors were given an opportunity to object to the terms of the agreements, and objections were filed by the Committee of Unsecured Creditors and by Texasgulf Chemicals Company, Inc., one of the plaintiffs seeking reclamation. A hearing was held on October 24, 1985, and on November 14, 1985, the court entered a Memorandum Opinion and Order which gave an additional thirty days to lodge objections to the validity of CBC's secured claim, and an additional sixty days to raise any other claims against CBC. *In re FCX, Inc.*, 54 B.R. 833 (Bankr.E.D.N.C.1986).

---

**1.** § 25-2-702 provides:

(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payments for all goods theretofore delivered under the contract, and stop delivery under this article (§ 25-2-705).

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this article (G.S. § 25-2-403). Successful reclamation of goods excludes all other remedies with respect to them. (1965, c. 700, s. 1; 1967, c. 562, s. 1.)

11 U.S.C. § 546(c) provides:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

**2.** The amounts claimed by each of the plaintiffs are:

| | |
|---|---|
| Pillsbury Company | $ 10,038.91 |
| CBP Resources, Inc. | 70,719.93 |
| Exxon Corporation | 43,837.46 |
| Texasgulf Chemicals Company | 63,004.00 |
| Keystone Steel & Wire Company | 67,723.23 |
| Union Oil Company of California | 8,693.10 |
| Monsanto Company | 46,135.20 |
| Archer Daniels Midland Company | 31,329.48 |
| TOTAL | $341,481.31 |

No appeal was taken from the order, no objections were made to CBC's secured claim, and no claims were asserted against CBC. The order of November 14, 1985, also provided that the postbankruptcy financing agreements should not prejudice the rights of any reclaiming creditor against either the debtor or CBC.

FCX, through two court approved private sales, sold most of its operating assets.[3] The first sale was opposed by one of the reclaiming sellers, Monsanto Company, and the order approving the sale contained a provision which noted that an administrative priority claim would be available to Monsanto Company if it prevailed in its adversary proceeding. The second sale was opposed by four of the reclaiming sellers, Union Oil Company of California (Unocal), Exxon Corporation, Texasgulf Chemicals Company, and Monsanto Company, and a similar provision was included in the approval order.

■ It is CBC's position that it is a "good faith purchaser" and as such is entitled to priority ahead of reclaiming sellers. If CBC is a "good faith purchaser" as it contends, CBC's floating lien on inventory is superior to the rights of the reclaiming sellers. *Matter of Samuels & Co., Inc.*, 526 F.2d 1238 (5th Cir.), *cert. denied sub nom., Stowers v. Mahon*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Los Angeles Paper Bag Co. v. James Talcott, Inc.*, 604 F.2d 38 (9th Cir.1979); *United States v. Wyoming Nat'l Bank of Casper*, 505 F.2d 1064 (10th Cir.1974); *First-Citizens Bank & Trust Co. v. Academic Archives, Inc.*, 10 N.C.App. 619, 179 S.E.2d 850, *cert. denied*, 278 N.C. 703, 181 S.E.2d 601 (1971); *Matter of McLouth Steel Corp.*, 22 B.R. 722 (Bankr. E.D. MI 1982); *see*, J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 24–9, at 1027 (2d ed. 1980); *see*, B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 10.6[4], at 10–40

(1980); *and see*, L. King, 4 *Collier on Bankruptcy*, ¶ 546.04, at 546.16 (15th ed. 1986).

The reclaiming sellers concede for the purpose of this motion that CBC has a valid lien, but contend that notwithstanding CBC's perfected floating lien on inventory, CBC is not a "good faith purchaser" within the meaning of Uniform Commercial Code § 2–702(3) (N.C.GEN.STAT. § 25–2–702(3)). The reasons why the reclaiming sellers say that CBC is not a good faith purchaser are set forth in the plaintiffs' brief.

To summarize, CBC has exercised substantial control over the activities of FCX, including dictating from a practical standpoint FCX's filing for protection under Chapter 11, notwithstanding prior conduct of CBC which indicated support for FCX's continued operation. CBC has not objected to the payment of other pre-petition creditors, notwithstanding the fact that the amount of such payments far exceeds the amounts claimed by the reclaiming sellers in these proceedings. Finally, CBC has agreed to compromise and subordinate a portion of its claim, which will supposedly allow the Defendant to fund a feasible plan of reorganization. Plaintiffs' Brief at 7.

.... CBC exercised substantial control over the activities of FCX. CBC had full and complete knowledge of the Debtor's financial condition. Immediately prior to the filing of the Chapter 11 petition herein, CBC informed FCX that the funds of FCX were being cut off, and CBC was well aware that sellers were continuing to ship to FCX after CBC's decision to suspend funding.

CBC informed FCX that it would continue funding only if FCX filed a Chapter 11 bankruptcy petition, and the filing of the petition herein was a direct consequence of that threat. Plaintiffs' Brief at 10.

---

**3.** The sale of FCX's operating assets located in South Carolina to Gold Kist, Inc. was approved by order of this court dated January 3, 1986. The sale of FCX's operating assets located in North Carolina to Southern States Cooperative, Inc. was approved by order of this court dated February 6, 1986.

The plaintiffs have not supported these allegations with affidavits, answers to interrogatories, or admissions on file. The plaintiffs, however, ask that the court consider the statements of FCX's officers made under oath at prior hearings in this case. The officers' testimony is summarized by the plaintiffs in their brief as follows:

> FCX filed such a Petition, according to oral testimony previously presented in this Chapter 11 proceeding by Mr. Jack Taylor, former President of FCX, because CBC informed FCX on or about September 13, 1985 that CBC would advance additional funds to FCX only under the protection of the Bankruptcy Court. Mr. Taylor has also previously indicated before this Court that CBC's decision on September 13, 1985, restricting funding was in conflict with a letter dated on or about September 6, 1985 in which CBC had indicated to FCX that CBC would continue funding. The former Chief Financial Officer of FCX, Mr. Robert Lyfort [sic], indicated in his testimony before this Court that although on or about September 13, 1985, FCX was in default under its loan agreements with CBC, CBC had not previously enforced the same or similar default provisions against FCX. Plaintiffs' Brief at 4.

CBC argues that the court may not consider this testimony since it is not part of an affidavit, deposition, answer to interrogatories, admission on file, or other form of evidence specifically authorized by Rule 56 of the Federal Rules of Civil Procedure. In support of its position, CBC cites the case of *In re Aughenbaugh*, 125 F.2d 887 (3rd Cir.1942). In that case (involving the issue of insolvency of a debtor) the court held that both the bankruptcy referee and the district court had improperly considered matters in the general bankruptcy case file which had not been offered at trial. The court, however, said that these papers from the debtor's file would have been admissible as court records without other proof if they had been offered in evidence. Basically, the problem in *Aughenbaugh* was one

of due process—a problem which is not present here.

The court is not limited to considering affidavits, depositions, answers to interrogatories, or admissions. 6 *Moore's Federal Practice,* ¶ 56.11[1.8] (1985). The testimony of the FCX officers, although not given in these proceedings, was made under oath in a proceeding in this case in which CBC participated and in which CBC was an interested party—the hearing to approve the postpetition lending arrangement between CBC and the debtor. It is true that the testimony was not elicited in an adversarial manner, but the court will nevertheless consider those portions of the testimony described in the plaintiffs' brief for purposes of determining this motion. *See,* 6 *Moore's Federal Practice,* § 56.11[8] (1985), particularly n. 13 at 56–295 to 96; *Ellis v. Cates,* 178 F.2d 791 (4th Cir.1949).

The undisputed facts are that CBC advanced funds to FCX secured by a valid lien on all of FCX's assets and that the balance at the time of bankruptcy was approximately $58,000,000. Those facts, absent a showing by the plaintiffs of misconduct on the part of CBC, establish that CBC is a "good faith purchaser" under UCC § 2–702(3). N.C.GEN.STAT. §§ 25–2–702(3), 25–2–403, and 25–1–201(32) and (33); *First-Citizens Bank & Trust Co. v. Academic Archives, Inc.,* 10 N.C.App. 619, 624, 179 S.E.2d 850, *cert. denied,* 278 N.C. 703, 181 S.E.2d 601 (1971); *Matter of Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir. 1976), *cert. denied sub nom., Stowers v. Mahon,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976). For purposes of this motion, the court must accept as true the testimony of Mr. Taylor and Mr. Lyford, but even so, that testimony does not establish conduct on the part of CBC sufficient to deny CBC the status of "good faith purchaser." CBC had every right to refuse to advance funds under its loan agreement because of the debtor's undisputed defaults. The fact that CBC would make future advances if a bankruptcy petition was filed does not change things. CBC was not obligated to advance *any* funds,

and its offer to make future advances contingent on the filing of a bankruptcy petition was neither illegal nor unreasonable.

The plaintiffs rely primarily on the case of *In re American Food Purveyors, Inc.,* 17 U.C.C.Rep.Serv. 436 (Bankr.N.D. GA 1974) to support their contention that CBC is not a "good faith purchaser." [4] In that pre-Code case involving a dispute between a trade creditor and a commercial factor with a floating lien on all of the debtor's inventory, the court received the unrebutted evidence of the trade creditor and found that the factor was not a good faith purchaser. In this adversary proceeding, however, the only evidence of misconduct by CBC is the testimony of Mr. Taylor and Mr. Lyford. That evidence, as already stated, is inadequate and need not be rebutted by CBC.

The plaintiffs also find support for their position that CBC is not a good faith purchaser in the case of *Monsanto Co. v. Walter E. Heller & Co., Inc.,* 114 Ill. App.3d 1078, 70 Ill.Dec. 646, 449 N.E.2d 993, 36 U.C.C.Rep.Serv. 834 (1983). In that nonbankruptcy case, close relationships existed among the secured creditor with the floating lien, the seller, and the borrower/purchaser. The court found that the seller had an expectation that the secured creditor would provide funding to pay for the seller's goods, and that by cutting off funds, the secured creditor violated a tacit understanding it had with the seller. There is no evidence here that CBC had any relationship with the reclaiming sellers, and there is no suggestion that CBC's decision to make further advances breached any understanding between CBC and the plaintiffs.

The final case cited by the plaintiffs with respect to the "good faith" issue is *Nelson v. Tiffany Industries, Inc.,* 778 F.2d 533 (9th Cir.1985). The *Nelson* case has nothing to do with the conflict between secured lenders and reclaiming sellers. In that case, the plaintiff sued a successor corporation for products liability arising from products manufactured by the defendant's predecessor. The Distict Court granted summary judgment in favor of the successor corporation which had purchased its predecessor's assets through its predecessor's bankruptcy. The United States Court of Appeals for the Ninth Circuit reversed and remanded for further findings to determine if there was a "collusive agreement" between the seller/debtor and the successor purchaser to file a bankruptcy petition to eliminate tort liability and thus contribute to the loss of the plaintiff's remedies. There is no evidence here of "collusion" between CBC and FCX. CBC simply exercised its rights under the loan agreement and refused to make additional advances. There is also no evidence that the reclaiming sellers suffered a "loss of remedies" by the bankruptcy filing. Not only have the plaintiffs contended that their reclamation rights are preserved in bankruptcy under § 546(c), but they also claim, as will later be discussed, that in bankruptcy their remedies are *broadened* by § 546(c) and expanded beyond those which they had under state law outside of bankruptcy.

The reclaiming sellers maintain that summary judgment should not be granted because genuine factual issues exist. Summary judgment is not given easily and the standards are strict.

Only where it is "perfectly clear that there are no issues in the case" is summary judgment proper, and even where a directed verdict would be proper after hearing the evidence, the district court should not try the case in advance by summary judgment. *Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, [72 S.Ct. 178, 96

---

4. Several courts have taken issue with the holding in the *American Food Purveyors* decision. *In re Western Farmers Association,* 6 B.R. 432, 436 (Bankr. W.D. WA 1980); *Matter of Melvin Liquid Fertilizer Co., Inc.,* 37 B.R. 587, 589 (Bankr. S.D. OH 1984); *Matter of McLouth Steel Corp.,* 22 B.R. 722, 724–5 (Bankr. E.D. MI 1982); *In re Wathen's Elevators, Inc.,* 32 B.R. 912 (Bankr. W.D. KY 1983); *see,* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code,* ¶ 24–9, at 1028 (2d ed. 1980); *and see,* B. Clark, *The Law of Secured Transactions under the Uniform Commercial Code,* ¶ 10.6[4], at 10–40 (1980).

L.Ed. 666] (1951). The nonmoving party is in a favorable posture being entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered." *Charbonnages DeFrance v. Smith*, 597 F.2d [406] at 414 [ (1979) ]. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

Nevertheless, summary judgment is appropriate when there is no genuine issue of material fact.

Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes. *See Cole v. Cole*, 633 F.2d 1083, 1089 (4th Cir.1980); *Atlantic States Construction Co. v. Robert E. Lee & Co.*, 406 F.2d 827, 829 (4th Cir.1969). *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

■ Essentially, the plaintiffs contend that CBC, for purposes of CBC's motion for summary judgment, must present evidence of its good faith. It is uncontroverted that CBC has a valid floating lien on the debtor's assets, and, CBC in the absence of evidence by the reclaiming sellers, CBC need show nothing further to establish that it is a "good faith purchaser." The burden of showing misconduct by CBC is on the plaintiffs. *Matter of Melvin Liquid Fertilizer Co., Inc.*, 37 B.R. 587, 589 (Bankr. S.D. OH 1984); and *In re Coast Trading Co., Inc.*, 744 F.2d 686, 690 (9th Cir.1984). That burden has not been met. The plaintiffs' factual allegations have not been substantiated, and summary judgment should be granted in favor of CBC to establish the superiority of CBC's lien over the rights of the plaintiffs as reclaiming sellers. *In re Wathen's Elevators, Inc.*, 32 B.R. 912, 920 (Bankr. W.D. KY 1983).

It is CBC's position that not only is its floating lien superior to the rights of the reclaiming sellers, but that the effect of the floating lien is to "cut off" all rights of the reclaiming sellers. *First-Citizens Bank & Trust Co. v. Academic Archives, Inc.*, 10 N.C.App. 619, 179 S.E.2d 850, *cert. denied*, 278 N.C. 703, 181 S.E.2d 601 (1971).

The plaintiffs, on the other hand, contend that the rights of a reclaiming seller are not cut off by the secured lender, but merely are subordinated to the secured creditor's lien. *In re Davidson Lumber Co.*, 22 B.R. 775, 776 (Bankr. S.D. FL 1982); *In re Wathen's Elevators, Inc.*, 32 B.R. 912 (Bankr. W.D. KY 1983); and *Matter of Melvin's Liquid Fertilizer Co., Inc.*, 37 B.R. 587 (Bankr. S.D. OH 1984). Furthermore, the plaintiffs say that if a reclaiming seller's rights are denied because of a prior lien, the seller is entitled to either an administrative priority or substitute lien under § 546(c)(2). *In re Western Farmers Association*, 6 B.R. 432 (Bankr. W.D. WA 1980).

■ The court agrees with the plaintiffs that rights of reclaiming sellers are not *automatically* extinguished simply because those rights may be subject to the rights of a secured creditor.

... to say that reclamation is "subject to" superior claims is neither to deny the validity of the sellers' rights nor to bar their claims. Rather the effect of this language is to eliminate their first position and relegate the sellers to some less commanding station. *In re Wathen's Elevators, Inc.*, 32 B.R. 912, 923 (Bankr. W.D. KY 1983).

■ The court does not agree, however, with the plaintiffs' position that reclaiming sellers are automatically entitled to either an administrative priority or substitute lien if their reclamation rights are frustrated by the presence of a prior lien. The right to an administrative priority or substitute lien exists *only* if there also exists a right to reclaim. "The right to an administrative priority is therefore in lieu of, not in addition to, any right to reclaim." *In re Coast Trading Co., Inc.*, 744 F.2d 686, 692 (9th

Cir.1984). *Matter of Flagstaff Foodservice Corp.*, 14 B.R. 462 (Bankr.S.D.N.Y.1981); and *Action Industries, Inc. v. Dixie Enterprises, Inc.*, 22 B.R. 855 (Bankr. S.D. OH 1982). "It is evident from a reading of Sections (2) and (3) [N.C.GEN.STAT. § 25–2–702(2) and (3)] that the rights of certain people *can* intervene and cut off those of a seller who desires to reclaim his former property." *First-Citizens Bank & Trust Co. v. Academic Archives, Inc.*, 10 N.C. App. 619, 624, 179 S.E.2d 850, *cert. denied*, 278 N.C. 703, 181 S.E.2d 601 (1971) (emphasis added).

If the Uniform Commercial Code, rather than giving a right to reclaim, instead gave the seller a junior lien on the property sold, the seller's lien in bankruptcy would only exist to the extent that the value of the prior lienholder's collateral exceeded the amount of the prior lienholder's claim. If the amount of the prior lienholder's security interest exceeded the value of the security, the seller's lien would have no value. The rights of a reclaiming seller under U.C.C. § 2–702 (N.C.GEN.STAT. § 25–2–702) have a lower status than that of a junior lien creditor and consequently a reclaiming seller's rights have no value if the floating lien, to which those rights are inferior, exceeds the value of the lienholder's collateral. In those circumstances, the lienholder's rights would be "cut off."

Section 546(c) preserves the rights that a reclaiming seller has under state law and § 546(c)(2), which authorizes the granting of an administrative priority or substitute lien, gives the court needed flexibility and some alternatives to facilitate the debtor in possession's use of its assets in a chapter 11 case. Section 546(c)(2), however, does not give reclaiming sellers more than they would have under state law.

The conclusion emerging plainly is that the legislative history falls far short of what would be needed for the definitive answer that Section 546(c)(2) intended to

give more to a reclaiming seller than he ever had either at common law or under U.C.C. Section 2–702(2).... There is absolutely nothing to show that Congress meant to expand rights given, absent bankruptcy, by state law or the common law. The plain language of all the legislative comments makes this clear. *Matter of Flagstaff Foodservice Corp.*, 14 B.R. 462, 467 (Bankr.S.D.N.Y.1981).

If the reclaiming seller was "cut off" under state law, then "cut off" he will be in his purchaser's bankruptcy.

Whether the plaintiffs meet the requirements of N.C.GEN.STAT. § 25–2–702, and if so, whether they are entitled to administrative priority claims under § 546(c)(2), will depend upon the facts determined at trial. CBC has offered no affidavits or other evidence to show that the plaintiffs cannot prevail as a matter of law, and there is a genuine dispute as to the material facts involved.[5] Accordingly, summary judgment on the issue of the plaintiffs' entitlement to an administrative expense priority will be denied.

IT IS SO ORDERED.

---

**5.** In its brief supporting CBC's motion for summary judgment, FCX argues that summary judgment should be granted because FCX was solvent at the time the goods were sold. CBC did not raise that issue, and in any event, the debtor's own recent plan and disclosure statement indicate that the debtor may not have been solvent. At the hearing, CBC argued that clearly the value of its collateral was less than its lien. CBC, however, offered no evidence to substantiate that assertion.