**In re DIVERSIFIED FOOD SERVICE DISTRIBUTORS, INC., Debtor.**

**Bankruptcy No. 91 B 20854.**

United States Bankruptcy Court, S.D. New York.

Aug. 20, 1991.

Garrity & McCusker, New York City, for Wilton Caterers, Inc. and Mack Bros. Ltd., Inc.

Finkel Goldstein Berzow & Rosenbloom, New York City, for debtor.

## DECISION ON MOTION FOR AN ORDER AUTHORIZING WILTON CATERERS, INC. AND MACK BROS. LTD., INC. TO RECLAIM CERTAIN GOODS, OR, ALTERNATIVELY GRANTING A PRIORITY ADMINISTRATION EXPENSE CLAIM

HOWARD SCHWARTZBERG,
Bankrtupcy Judge.

The Chapter 11 debtor, Diversified Food Service Distributors, Inc. ("Diversified"), opposes the motion brought by Wilton Caterers, Inc. ("Wilton") and Mack Bros. Ltd., Inc. ("Mack") pursuant to 11 U.S.C. § 546(c) and U.C.C. § 2–701 to reclaim merchandise sold to the debtor eight days before the debtor filed its Chapter 11 petition with this court. The movants demanded in writing a return of the merchandise within ten days after the debtor's receipt of the goods as required by 11 U.S.C. § 546(c)(1). The debtor contends that the reclaiming sellers' rights are subject to a previously perfected after-acquired lien on the debtor's inventory held by CIT Corp./Factoring, Inc. ("CIT"). The facts are further compounded as a result of a court-ordered cash collateral stipulation which gave CIT a super priority administration expense claim as well as a lien on pre- and post-petition assets of the debtor. Additionally, the debtor was authorized by order of this court to sell its inventory at auction, with CIT's lien to attach to the proceeds. Accordingly, the debtor sold its inventory at the auction to a competitor and no longer has possession of the merchandise in question. Thus, the dispute centers on whether CIT's right to receive the proceeds from the auction sale is subject to the reclaiming sellers' right to the goods or their proceeds.

## FINDINGS OF FACT

1. On May 10, 1991, the debtor, Diversified Food Service Distributors, Inc. and its affiliated company, N. Merberg & Son, Inc., each filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtors then continued to operate and manage their businesses as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Eight days earlier, on May 2, 1991, the reclaiming sellers, Wilton and Mack, sold and delivered to the debtor, Diversified, quantities of canned food goods in the respective amounts of $1,400.50 and $3,222.75 for a total of $4,623.25. When Diversified received the goods on May 2, 1991, it was then insolvent in that its total liabilities exceeded its total assets.

3. The next day, on May 3, 1991, Wilton and Mack each made written demand upon Diversified for the return and reclamation of the goods in accordance with 11 U.S.C. § 546(c) and U.C.C. § 2–702.

4. On May 6, 1991, Wilton and Mack sent a truck to pick up the goods at Diversified's premises, without success. After repeatedly telephoning, the reclaiming sellers were informed several days later by Diversified's president that the goods could not be returned because CIT had taken physical possession of Diversified's business and inventory and that guards had been posted at Diversified's premises. There is no dispute that the goods in question were then at Diversified's premises.

5. After Diversified filed its Chapter 11 petition with this court on May 10, 1991, CIT was stayed from further enforcement of its financing lien. As a result of an

inventory and security agreement between Diversified and CIT, dated March 7, 1989, CIT was granted a continuing general lien and security interest in all present and after-acquired merchandise, inventory and goods of Diversified and the proceeds thereof. It is also undisputed that CIT duly perfected its lien and filed appropriate U.C.C. Financing Statements with respect to its lien.

6. Pursuant to 11 U.S.C. § 552, property acquired by Diversified post-petition was not subject to CIT's after-acquired security agreement and lien which was entered into between Diversified and CIT before the commencement of Diversified's Chapter 11 case. However, the merchandise which the reclaiming sellers sold to Diversified was delivered to and acquired by Diversified before it filed its Chapter 11 petition and is, therefore, not within the efficacy of 11 U.S.C. § 552.

7. By order dated July 2, 1991, the debtor was authorized to sell its inventory at auction, with all liens to attach to the proceeds. The debtor's inventory was purchased at the auction by one of its competitors.

8. The debtor disputes the reclaiming sellers' right to a lien on the proceeds to the extent of the unpaid merchandise, but concedes that the sellers are entitled to an administrative priority claim under 11 U.S.C. § 503(b).

## DISCUSSION

■ At issue is whether the reclaiming sellers under 11 U.S.C. § 546(c) and U.C.C. § 2–702 have priority over a previously perfected floating lien on inventory held by CIT.

The reclaiming sellers established the condition required to satisfy 11 U.S.C. § 546(c) in that they sold and delivered merchandise to the debtor, Diversified, in the ordinary course of the sellers' businesses at a time when Diversified was insolvent and that they demanded reclamation from Diversified in writing within ten days after Diversified received the merchandise. However, the reclaiming sellers were met with Diversified's refusal to return the merchandise because CIT, a creditor holding a perfected secured floating lien on Diversified's inventory, had physically taken possession of all of Diversified's inventory and equipment.

Reclamation by the sellers is now impossible because Diversified's inventory was sold at a court-authorized auction, with all liens to attach to the proceeds. This sale occurred before the reclaiming sellers filed their present motion pursuant to 11 U.S.C. § 542(c). The reclaiming sellers now maintain that their right to the proceeds of sale, to the extent of their unpaid claims in the sum of $4,623.35, is superior to CIT's perfected floating lien on Diversified's inventory.

The reclaiming sellers place great reliance on *Ray–O–Vac v. Daylin, Inc. (In re Daylin, Inc.)*, 596 F.2d 853 (9th Cir.1979). However, that case was decided under the repealed Bankruptcy Act of 1938, as amended, and merely held that a reclaiming unpaid seller could assert U.C.C. § 2–702 and prevail over a debtor in possession or a trustee in bankruptcy. The *Daylin* case did not address the issue as to a reclaiming seller's status vis-a-vis a previously perfected inventory lien creditor. The *Daylin* case was the forerunner to the adoption of 11 U.S.C. § 546(c) under the current Bankruptcy Code, which simply codifies the holding in that case and resolved a dispute under the former Bankruptcy Act as to whether a reclaiming seller's rights amounted to a disguised statutory lien or preference.

■ Although the Bankruptcy Code specifically authorizes an unpaid seller to reclaim merchandise under express limitations delineated in 11 U.S.C. § 546(c), that right may not be asserted to defeat the interests of previously perfected inventory lien creditors. The right of reclamation from a breaching buyer is subordinate to those of previously perfected lien creditors, who are regarded in the same fashion as good faith purchasers whose rights are also superior to those of reclaiming sellers. *Collingwood Grain, Inc. v. Coast Trading Company (In re Coast Trading Co., Inc.),*

744 F.2d 686 (9th Cir.1984); *Stowers v. Mahon (In re Samuels & Co., Inc.)*, 526 F.2d 1238 (5th Cir.1976) (en banc), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *In re Roberts Hardware Co.*, 103 B.R. 396 (Bankr. N.D.N.Y.1988).

■ Indeed, the reclaiming sellers' demand for the proceeds of the auction sale, to the extent of their unpaid bills, is not consistent with the reclamation right authorized under 11 U.S.C. § 546(c) and U.C.C. § 2–702. As stated by Judge Anthony M. Kennedy (now Mr. Justice Kennedy):

> Section 2–702 speaks only of reclaiming *goods* not of reclaiming proceeds. Section 2–702, therefore, does not in and of itself create a right to reclaim the proceeds of the resale of the goods.

*In re Coast Trading Co., Inc.*, 744 F.2d at 691.

■ Because the reclaiming sellers have satisfied the prerequisites of 11 U.S.C. § 546(c), but are prevented from enforcing their reclamation rights against CIT's superior status, they are entitled to an administrative expense priority claim in accordance with 11 U.S.C. § 546(c)(2)(A) which:

> (A) grants the claim of such a seller priority as a claim specified in Section 503 of this title
>
> . . . .

11 U.S.C. § 546(c)(2)(A). *See In re Roberts Hardware Co.*, 103 B.R. at 399; *In re AIC Photo, Inc.*, 57 B.R. 56, 60 (Bankr. E.D.N.Y.1985).

An administrative expense claim under 11 U.S.C. § 503(b) is accorded a first priority status pursuant to 11 U.S.C. § 507(a)(1).

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B) and (E).

2. The preexisting perfected inventory lien held by CIT on Diversified's inventory is superior to the reclamation rights asserted by Wilton and Mack pursuant to 11 U.S.C. § 546(c) and U.C.C. § 2–702.

3. The motion for reclamation filed by Wilton and Mack is denied, as is their claim for a lien on the proceeds of the auction sale of the debtor's inventory, to the extent of the unpaid bills in the aggregate sum of $4,623.25.

4. The reclaiming sellers, Wilton and Mack, are entitled to an administrative first priority expense claim in the sum of $4,623.25, in accordance with 11 U.S.C. §§ 546(c)(2)(A), 503(b) and 507(a)(1).

SETTLE ORDER on notice.