In re **BLINN WHOLESALE DRUG CO., INC., Debtor.**

**SANDOZ PHARMACEUTICALS CORPORATION, Plaintiff,**

v.

**BLINN WHOLESALE DRUG CO., INC., Defendant.**

Bankruptcy No. 891–85627–20.
Adv. No. 892–8191–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Feb. 22, 1994.

441

Richard P. Shapiro, Shanley & Fisher, P.C., New York City, for Sandoz Pharmaceuticals Corp.

Richard Braverman, Teitelbaum, Braverman & Borges, P.C., New Hyde Park, NY, for Blinn Wholesale Drug Co.

Stan Y. Yang and Scott Y. Stuart, Office of the U.S. Trustee, Garden City, NY.

Stuart E. Hertzberg, Pepper, Hamilton & Scheetz, Detroit, MI, for Official Unsecured Creditors Committee.

Jonathan N. Helfat, Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Congress Financial Corp.

## DECISION, ORDER AND JUDGMENT DETERMINING RIGHTS BETWEEN RECLAIMING SELLER AND LIEN CREDITOR

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court upon a motion for summary judgment ("Motion") by plaintiff Sandoz Pharmaceuticals Corporation ("Plaintiff"), and a cross-motion ("Cross-motion") by the debtor, Blinn Wholesale Drug Co., Inc. ("Debtor") for summary judgment dismissing Plaintiff's adversary proceeding ("Adversary Proceeding"). The Adversary Proceeding was commenced by Plaintiff, a seller of goods, seeking an order declaring the validity of, and compelling Debtor's compliance with, Plaintiff's alleged right to reclaim, pursuant to New York's Uniform Commercial Code, goods fully encumbered by a lien held by Congress Financial Corp. ("Congress").

The Court has jurisdiction over this case pursuant to section 157(a), 157(b)(1) and 1334(a) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (B), (K), and (O) of title 28.

For the reasons set forth below, the Court holds that: (1) Plaintiff holds a **VALID** right

of reclamation, the subject of which is the pharmaceutics it delivered to Debtor on credit; (2) this reclamation right is **SUBJECT** to Congress's security interest as a good faith purchaser for value; (3) Plaintiff's right of reclamation was denied when the pharmaceutics were sold; (4) this right of reclamation was the right to reclaim goods fully encumbered by liens and the right was valueless; (5) Plaintiff's resulting secured or administrative expense priority claim must accordingly be valueless; (6) Debtor is authorized and **DIRECTED** to tender to Congress an amount sufficient to satisfy its claims against the estate, such tender not to exceed the value of the property remaining in the estate, and such tender to be made so as to be actually received by Congress on or before March 31, 1994; (7) all other requests for relief by Plaintiff are **DENIED;** (8) Congress is directed to furnish an **ACCOUNTING** of the amount and extent of the satisfaction and release, if any, of its lien, to the Court, Debtor and Plaintiff, so as to be actually filed and received on or before April 22, 1994; and (9) Debtor's Cross-motion for summary judgment is **GRANTED** and Plaintiff's Adversary Proceeding is **DISMISSED** and to be **CLOSED** by the Clerk's Office.

## UNCONTESTED FACTS

On December 17, 1991 ("Petition Date"), Debtor filed a petition for relief under chapter 11 of title 11, United States Code ("Bankruptcy Code" or "Code"). The following events occurred prior to the Petition Date.

On March 30, 1990, Debtor obtained a loan from Congress.[1] Pursuant to their financing agreement, Congress received a lien upon all of Debtor's present and after-acquired inventory and all other personal property ("Collateral").

On December 4, 1991, and again on December 10, 1991, Plaintiff sold certain pharmaceutical goods to Debtor on credit. The price due for all goods delivered was $51,-086.85. All pharmaceutics were received by Debtor within ten days prior to the Petition Date; some were sold by Debtor pre-petition.

As of the Petition Date, the amount owed by Debtor to Congress exceeded $17,000,-000.00, which was in excess of the value of the Collateral. Debtor subsequently obtained Court authorization for up to $20,000,-000.00 of continued financing by Congress. Order Authorizing Permanent Financing, dated February 20, 1992. Congress's advances were again to be secured by virtually all personal property of Debtor, that is, the Collateral.

On the Petition Date, Debtor received from Plaintiff a written demand seeking reclamation of the goods sold on December 4th and 10th, 1991, pursuant to section 2–702 of New York's Uniform Commercial Code ("NYUCC").[2] While, as stated above, some of the pharmaceutical goods had already been sold prior to Plaintiff's reclamation demand, $37,876.85 worth of the goods remained in Debtor's possession. Insisting that all pharmaceutics delivered by Plaintiff formed part of the Collateral encumbered by Congress's "blanket" lien, Debtor refused to comply with Plaintiff's reclamation demand.

By order dated June 11, 1992, the Court approved the sale of all or substantially all of Debtor's assets to Commons Metro, Inc. ("Sale Order"). The amount received by Debtor's estate was substantially less than the claim of Congress. Pursuant to the Sale Order, Plaintiff's reclamation right, if any, continued in the proceeds of the sale of the Collateral ("Proceeds"). Order Pursuant to 11 U.S.C. § 363, dated June 11, 1992, at 5–6.

On November 19, 1992, Plaintiff filed the Motion seeking summary judgment determining (1) that its reclamation demand is valid and, among other things, (2) "requiring [Debtor] to pay said reclamation claim". Plaintiff's Motion, dated November 18, 1992, at 1. On December 8, 1992, Debtor filed the

---

1. The Court has not been apprised by either party of the exact date when this financing was furnished.

2. If goods sent by a seller on credit are received by the buyer while insolvent, NYUCC section 2–702(2) gives the seller the right to reclaim the goods on demand made within ten days after their receipt. N.Y.U.C.C. § 2–702(2) (McKinney 1993) (quoted in part *infra* at 443). This section and the impact of the buyer's bankruptcy are the subject of this opinion, and are discussed *infra*.

Cross-motion, which opposed Plaintiff's Motion and sought summary judgment dismissing the Adversary Proceeding. After oral argument was heard on the Motion and Cross-motion, the Court reserved decision.

The issues are: (1) the validity of Plaintiff's reclamation demand in light of Congress's prior perfected lien upon the same goods (Proceeds), and (2) if Plaintiff holds a valid right of reclamation, how ·that right should be treated, again, in light of Congress's superior lien.

## LEGAL DISCUSSION

### A. Seller's State Law Reclamation Right

█ In New York, a seller's right to reclamation is established by section 2–702 of the NYUCC ("section 2–702"). N.Y.U.C.C. § 2–702 (McKinney 1993). Subsections (2) and (3) of section 2–702 state in pertinent ·part:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt....

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article....

N.Y.U.C.C. § 2–702(2)–(3) (McKinney 1993).

Section 2–702(2) is satisfied by the undisputed facts of the case at bar: Plaintiff, a seller, delivered goods on credit to Debtor, an insolvent buyer, and demanded in writing reclamation of the goods before ten days after Debtor received the goods. Accordingly, the Court holds that Plaintiff has a statutory right of reclamation under New York state law. *Id.* § 2–702(2) (McKinney 1993).

A seller's reclamation rights can be diminished, however, by section 2–702(3) which provides that the seller's reclamation right is "subject to the rights of a buyer in ordinary course or other good faith purchaser". *Id.* § 2–702(3) (McKinney 1993). Debtor maintains that Congress is a good faith purchaser for value with rights in the Proceeds which are superior to Plaintiff's right of reclama-

tion. Since, Debtor argues, Congress's lien encumbers all Debtor's assets, and its claim is under-secured, no surplus remains for Plaintiff's subordinate reclamation right.

We therefore next examine whether Congress is a "good faith purchaser" as that term is used in section 2–702(3). *Id.*

As stated above, the parties have not disputed that Congress holds a blanket lien upon all present and after-acquired personal property of Debtor, pursuant to an agreement executed in 1990. To be accorded "good faith purchaser" status, satisfaction of several subsections of NYUCC section 1–201 is required. . The pertinent parts of NYUCC section 1–201 provide:

(19) "Good faith" means honesty in fact in the conduct or transaction concerned....

(32) "Purchase" includes taking by sale, ... lien, ... or any other voluntary transaction creating an interest in property.

(33) "Purchaser" means a person who takes by purchase....

(44) "Value". ... [A] person gives "value" for rights if he acquires them

(a) in return for a binding commitment to extend credit ... or

(b) as security for or in total or partial satisfaction of a pre-existing claim....

N.Y.U.C.C. § 1–201(19), (32), (33), (44) (McKinney 1993). With respect to Congress: "Good faith" was not disputed between the parties and, since Congress acted in· 1990, good faith cannot be credibly assailed and will be assumed; Congress "purchased" since it took by lien; Congress is a "purchaser" since it took by purchase; and Congress gave "value" for its rights acquired in Debtor's property since it extended credit. *Id.*

The Court holds, therefore, that Congress is a good faith purchaser for value and that Plaintiff's valid reclamation right is subject to Congress's rights. N.Y.U.C.C. §§ 1–201(19), (32), (33), (44), 2–702(3) (McKinney 1993).[3]

**3.** *See, e.g., In re Shattuc Cable Corp.,* 138 B.R. 557, 563 & n. 6 (Bankr.N.D.Ill.1992) ("It appears to be a well-settled rule of law that the holder of a perfected security interest under an after-ac-

## B. Seller's Reclamation Right in the Event of Buyer's Bankruptcy

■ Both Plaintiff and Debtor next cite and argue pursuant to section 546(c) of the Bankruptcy Code as governing the remaining issue at bar. Essentially, Code section 546(c) sustains the existence of sellers' valid statutory or common law reclamation rights (which, in New York, derive from NYUCC section 2–702) in the event of the buyer's bankruptcy. 11 U.S.C. § 546(c) (1993)[4]; H.R.Rep. No. 595, 95th Cong., 1st Sess. 372 (1977); Sen.Rep. No. 989, 95th Cong., 2d Sess. 86–87 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872–73, 6328 (hereinafter "House and Senate Reports") ("The purpose of [section 546(c)] is to recognize, in part, the validity of section 2–702 of the Uniform Commercial Code...."), reprinted in Norton Bankr.L.Prac.2d, Bankr. Code 520 (Clark, Boardman & Callaghan 1993–94) (hereinafter "Norton's 1993–94 Code").

Additionally, pursuant to Code section 546(c), the bankruptcy court may deny a seller's valid right of reclamation, but only if the court secures or grants administrative expense priority to the seller's resulting claim. 11 U.S.C. §§ 546(c)(2), 503(b)[5] (1993); In re Child World, Inc., 145 B.R. 5, 8 (Bankr. S.D.N.Y.1992), aff'd, 147 B.R. 323 (S.D.N.Y.), aff'd and remanded without opin., 992 F.2d 321 (2d Cir.1993); 5 Collier on Bankruptcy ¶ 546.04 at 546–21 (King, et al. eds., 1992) (hereinafter "Collier on Bankruptcy") (citations omitted); House and Senate Reports.[6]

Our next task is to determine whether the Court will (or must) deny reclamation to Plaintiff.

quired property clause will be treated as a good faith purchaser under § 2–403 with rights superior to the seller's right of reclamation under § 2–702 of the UCC.") (citing, e.g., Stowers v. Mahon (In re Samuels & Co.), 526 F.2d 1238, 1241 (5th Cir.1976) ("[U]nder Article Nine, the perfected security interest is unquestionably superior to the interest of the seller.") (other citations omitted)); see Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.), 62 B.R. 315 (Bankr.E.D.N.C.1986). In FCX, the court was confronted with describing the nature of a reclaiming seller's rights when such rights are subordinate to the rights of a good faith purchaser. Id. at 322. The court stated that "the rights of reclaiming sellers are not automatically extinguished simply because those rights are subject to the rights of a secured creditor." Id. (emphasis in original). The Court agrees with this characterization since it conforms to the plain meaning of the words used in both section 546(c) of the Bankruptcy Code ("are subject to") and section 2–702 of the NYUCC ("is subject to"). 11 U.S.C. § 546(c) (1993); N.Y.U.C.C. § 2–702(3) (1993). See also FCX, 62 B.R. at 322 (citing In re Davidson Lumber Co., 22 B.R. 755, 766 (Bankr.S.D.Fl.1982); Harris Tr. & Sav. Bank v. Wathen's Elevators, Inc. (In re Wathen's Elevators, Inc.), 32 B.R. 912, 923 (Bankr. W.D.Ky.1983); In re Melvin's Liquid Fertilizer Co., 37 B.R. 587, 590 (Bankr.S.D.Ohio 1984)).

4. Section 546(c) of the Code provides in pertinent part:

Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

11 U.S.C. § 546(c) (1993). Note that the statute adds a requirement, not found in the state reclamation provision, that the reclamation demand be in writing. Id.; N.Y.U.C.C. § 2–702 (McKinney 1993).

5. Bankruptcy Code section 503(b) provides for the allowance of claims for administrative expenses. 11 U.S.C. § 503(b) (1993). Administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries...." Id. Under Code section 507(a), claims for administrative expenses have first priority. 11 U.S.C. § 507(a)(1) (1993). The Code plainly aids the seller whose valid right of reclamation is denied by granting it a claim that is a secured one or an unsecured one with first priority. 11 U.S.C. § 546(c)(2) (1993); see House and Senate Reports; Norton's 1993–94 Code at 520.

6. The House and Senate Reports advise: "The right [of reclamation] is subject, however, to the power of the court to deny reclamation and protect the seller by granting [it] a priority as an administrative expense for [its] claim arising out of the sale of the goods". House and Senate Reports, reprinted in Norton's 1993–94 Code 520.

Plaintiff asserts that denial of its right of reclamation due to Congress's superior rights in the Collateral requires the Court to grant the claim administrative expense priority or to secure the claim by a lien. Plaintiff's Memorandum of Law, dated November 18, 1992, at 6 (quoting *American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group)*, 74 B.R. 250, 251 (N.D.Ill. 1987)).[7] Debtor counters, asserting that Plaintiff may have an administrative priority (or secured) claim only to the extent that the amount of Congress's secured claim is exceeded by the value of the Collateral at the time the reclamation notice was received. Debtor's Memorandum of Law, dated December 3, 1992, at 8 (citing *In re FCX, Inc.*, 62 B.R. 315 (Bankr.E.D.N.C.1986); *In re Coast Trading Co.*, 744 F.2d 686 (9th Cir. 1984)). According to Debtor, if Congress's claim is over-secured, Plaintiff's reclamation right attaches to that balance of Proceeds; however, if Congress's claim is under-secured, the pharmaceutical goods Plaintiff delivered all serve as Congress's Collateral and there is nothing for Plaintiff to reclaim.

To facilitate our analysis, we again examine Code section 546(c) (quoted in part above at note four) and certain relevant scenarios that are possible thereunder.

Under a first scenario, the seller holds a valid right of reclamation under statutory or common law, and the goods to be reclaimed are not subject to any encumbrances. Here, the court may remain idle and allow the seller to pursue its right of reclamation.[8]

*See* 11 U.S.C. § 546(c) (1993). Of course, if the court denies reclamation to this seller the court must either grant the seller's claim administrative expense priority status, or secure the seller's claim by a lien. *Id.*

Under the next scenario, a seller makes a reclamation demand to which it is not entitled under statutory or common law. *E.g., Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 692 (9th Cir.1984) (seller did not demonstrate it had right to reclaim goods or proceeds). Here, the court might deny the demand, but the bankruptcy court is not denying reclamation "to a seller with such a right." 11 U.S.C. § 546(c) (1993). Thus, the court is not compelled to provide this seller with an administrative expense priority claim nor must the court secure the seller's claim by a lien. *Id.* The Court holds that pursuant to its express terms, section 546(c) of the Bankruptcy Code is neither relevant nor applicable where a seller has no right of reclamation under applicable statutory or common law. *Id.*

■ The third scenario is more difficult. Here, the seller has a valid reclamation right, but the seller's right to reclaim is subject to the superior rights of another, such as a creditor with a prior perfected secured interest in the same goods. *See* N.Y.U.C.C. § 2–702(3) (McKinney 1993). This scenario is equivalent to the facts at bar. Plaintiff is a seller with a valid reclamation right under the applicable New York statute, and its right has not been assailed. But, as we held

---

7. Plaintiff and Debtor also discuss two other cases that are substantially similar to the case at bar. One case is *In re Diversified Food Service Dist. Inc.*, 130 B.R. 427 (Bankr.S.D.N.Y.1991). In *Diversified*, the court held that section 546(c) of the Code entitles a reclaiming seller to have a claim with administrative expense priority when its reclamation claim is denied due to the existence of a preexisting perfected lien on the goods. *Id.* at 430 (citing 11 U.S.C. § 546(c)(2)(A); *In re Roberts Hardware Co.*, 103 B.R. 396, 399 (Bankr.N.D.N.Y.1988); *In re AIC Photo, Inc.*, 57 B.R. 56, 60 (Bankr.E.D.N.Y. 1985)).

The other case cited by the parties is *In re Roberts Hardware Co.*, 103 B.R. 396 (Bankr. N.D.N.Y.1988). In *Roberts*, the rights of the reclaiming seller once again conflicted with the rights of a creditor who held a prior perfected

security interest in present and after-acquired assets of the debtor, including the goods delivered. The *Roberts* court, in virtually the same manner as the *Diversified* court, read section 546(c) as entitling the reclaiming seller to a claim with administrative expense priority when a creditor's "superior status precludes its ability to exercise its right of reclamation with respect to the goods and any ensuing proceeds." *Id.* at 399 (citing *In re Western Farmers Assoc.*, 6 B.R. 432, 437 (Bankr.W.D.Wash.1980)).

As discussed *infra*, the Court disagrees with this line of cases.

8. Whether an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure, or mere relief from the automatic stay is necessary is not before the Court. *See* 11 U.S.C. § 362(a) (1993); Fed.R.Bankr.P. 7001(1), (2), (9) (1993).

above, Plaintiff's right to reclaim is subject to Congress's lien. N.Y.U.C.C. § 2–702(3) (McKinney 1993) ("The seller's right to reclaim . . . is subject to the rights of a buyer in ordinary course or other good faith purchaser. . . ."); *id.* § 1–201 (McKinney 1993).

Continuing under this scenario, if the seller nevertheless demands reclamation of its goods which are encumbered by a prior perfected lien (as Plaintiff has done), a court must choose between two alternatives. The court may either remain idle and allow the seller to reclaim the goods (subject to the lien), or the court can deny reclamation to the seller. 11 U.S.C. § 546(c)(2) (1993). The Court holds that Bankruptcy Code section 546(c) empowers a court to select either option. *Id.*

Plaintiff argues that it is necessary to deny reclamation to a seller—and give the seller section 546(c)(2) relief, in any case where the seller's right of reclamation is subject to a superior interest in the goods. Plaintiff's Memorandum of Law, dated November 18, 1992, at 6 (citing *American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group)*, 74 B.R. 250 (N.D.Ill.1987)).[9] Under Plaintiff's theory, the seller has a valid right of reclamation, but it must be denied because it is subject to another's superior interest in the goods; and, since the Court is denying reclamation to a seller with such a right, the court must grant the seller with one form of the alternative reliefs provided in Code section 546(c)(2). *Id.* The Court does not agree that denial of reclamation is required under this scenario, however. To demonstrate why this is so, we proceed under this third scenario and examine the results of the two alternatives available to a court.

As stated, a court may allow reclamation even where the seller's right of reclamation is subject to a lien encumbering the goods. In New York, this reclaiming seller will take subject to that lien. N.Y.U.C.C. § 2–702(3) (McKinney 1993). Thus, presumably, the seller must first account for the lien encumbering the goods. *See id.* Also, since the lien travels with the goods, the lien creditor can (presumably, out of the bankruptcy court), exercise its New York state law rights against the goods or their proceeds, by repossession or otherwise. *See generally* N.Y.U.C.C. §§ 9–101—9–507 (McKinney 1993) (Article 9 of the Uniform Commercial Code, which governs "Secured Transactions"). If, after reclamation is allowed, the goods are repossessed by the lien holder, any surplus goods remaining after satisfaction of the lien presumably belong to the seller pursuant to its reclamation right. *See* N.Y.U.C.C. §§ 2–702(3); 9–502; 9–504 (McKinney 1993). Other issues can arise, but, nevertheless, the balance of issues can be determined by state court according to state law, and the bankruptcy court should have no further involvement in the rights of the reclaiming seller and the lien creditor.

It is evident from this inquiry into the effects of allowing reclamation where the goods are encumbered by a superior lien, that the bankruptcy court is *not required* to deny reclamation. Where reclamation of the goods is allowed in spite of encumbrances, Code section 546(c) is not triggered and the relief thereunder is not applicable. This is the "hands off" approach: The bankruptcy court is not denying reclamation to a seller with such a right and is not required to secure or grant administrative priority status to the seller's claim. 11 U.S.C. § 546(c) (1993). Once the goods are reclaimed, it will

---

**9.** *Bosler* writes: "When reclamation is denied to a seller with an otherwise valid right—where, for example, as here, the goods are subject to a senior secured claim—the court may do so only by granting that seller an alternative form of relief." *Id.* 74 B.R. at 253. Our research has also revealed decisions requiring denial of reclamation merely because the seller's reclamation right is subordinate to a lien encumbering those goods. *E.g.*, *In re Diversified Food Service Dist. Inc.*, 130 B.R. 427, 430 (Bankr.S.D.N.Y.1991) ("Because the reclaiming sellers have satisfied the prerequisites of 11 U.S.C. § 546(c), but are

prevented from enforcing their reclamation rights against [the lienholder's] superior status, they are entitled to an administrative expense priority claim. . . ."); *Western Farmers Assoc. v. Ciba Geigy (In re Western Farmers Assoc.)*, 6 B.R. 432, 436 (Bankr.W.D.Wash.1980) ("[Where] the rights of reclamation are subordinate to [a] security interest . . . the demands for reclamation must be denied. [And i]f reclamation is denied to sellers with such a right, Section 546(c)(2) requires that they be granted either a lien or an administrative priority.").

be as if there were no debtor and no bankruptcy court, and this is proper.

This brings us to the second alternative under this third scenario. Here, the court chooses to deny reclamation to a seller whose reclamation right is subject to the rights of a creditor with a lien upon the goods. One understandable reason for denying reclamation under these or any circumstances is to assist the debtor's reorganization. The court might be persuaded to allow the debtor to sell or continue to use the goods subject to the lien and give the seller an administrative expense priority or secured claim.[10] The court would be deeming the goods much more valuable and necessary to debtor's effective reorganization than if returned, with liens thereon, to the seller. Of course, denial triggers the requirement that the seller's resulting claim be secured or given administrative expense priority. 11 U.S.C. § 546(c)(2) (1993). Most importantly, though, while denying reclamation might be prudent, like the first alternative under this scenario, it is not required: It is an option exercised by the court pursuant to the statutory authority of Bankruptcy Code section 546(c)(2). *Id.*

█ One final scenario exists; here, three factors are present: (1) The goods are fully or substantially encumbered by a superior lien; (2) the seller nevertheless seeks reclamation; (3) denying reclamation has no benefit to the estate since the goods are not necessary to an effective reorganization, nor could the debtor's estate ever realize a profit from a sale of the goods after satisfaction of encumbrances. Presumably, reclamation under this scenario is a valueless right which, if nevertheless asserted, will be unproductive to both the seller and the lien creditor. But choosing whether to deny or allow reclamation proves perplexing if the court ponders the results of either alternative.

If reclamation is allowed, the court should recognize that, as in the instant case, the seller seeks to reclaim these substantially or fully encumbered goods only then to have to account for the lien by returning the goods or the proceeds thereof to the creditor, or by satisfying the lien. It is possible that the goods, the reclaiming seller, or both, might vanish. The bankruptcy court might be unduly constraining the lien-holder to track down the goods or the seller in state court or by "self-help", *see* N.Y.U.C.C. § 9–503 (McKinney 1993). At the least, the court would be participating in a presumably farcical routine of requiring fully encumbered goods to be returned to the seller who then must satisfy the rights of the lien creditor.

But if the court declines to participate in this routine and denies reclamation, it elevates the seller's unsecured non-priority claim for the price of the goods delivered to an administrative expense priority or secured claim. Strengthening the seller's claim by denying reclamation would be improper under these circumstances since it is to the detriment of all other creditors while not to the benefit of the debtor. It would be plainly improper if a court denied a valueless reclamation right, giving the seller a secured or high priority claim against a debtor's estate, where the same seller would have an unsecured non-priority claim were it not for bankruptcy. *U.S. v. Butner*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' ") (quoting *Lewis v. Manufactures Nat'l Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)); *Union Pac. R.R. Co. v. Moritz (In re Iowa R.R. Co.)*, 840 F.2d 535, 536–37 (7th Cir.1988) (bankruptcy court must implement rather than alter state law defined property rights) (citing *Butner*, 440 U.S. at 54–57, 99 S.Ct. at 917–19; *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988); *Boston & Me. Corp. v. Chicago Pac. Corp.*, 785 F.2d 562, 565–66 (7th Cir. 1986)).

---

**10.** *See* 5 Collier on Bankruptcy ¶ 546.04 at 546–21–22 (Where seller's reclamation rights "are unavailable solely because of a secured creditor's superior rights in the goods ... the seller is often granted an administrative expense claim or lien, at least to the extent the goods were in the debtor's possession at the time of the seller's demand.").

Three solutions are available. Under the first solution, the seller desires the goods (notwithstanding the full or substantial encumbrance) and will not accept the proceeds in lieu thereof. The bankruptcy court will allow reclamation only after the seller satisfies the encumbrance upon the goods held by the lien-holder. The sole distinction from the routine we referred to above as "farcical", would be that the lien-holder would not have to proceed against the seller in another forum or by repossession. The seller cannot be heard to complain because the venue or method whereby the lien-holder is satisfied cannot alter the value of its right of reclamation.[11] Because reclamation is not being denied, relief under section 546(c)(2) is inapplicable.

A second solution, favorable where the seller declines to satisfy the claim of the lien-holder but nevertheless asserts its reclamation right, would be for the court to authorize liquidation of the goods. The proceeds of this sale will be used to first satisfy the superior claim of the lien-holder. The balance, if any, would be available for the satisfaction of the seller's reclamation demand. The seller would be able to file an unsecured non-priority claim for the difference between what it received after court authorized liquidation of the goods and the amount it stood to receive for the goods delivered to the debtor on credit.

Under this second proposed solution, reclamation is being denied to the extent that the seller is denied reclamation of the goods prior to their liquidation. At the point of denial, section 546(c)(2) is triggered. The *amount* of the required administrative or secured claim to which seller is entitled is addressed in the ensuing paragraphs.

A final solution would be to deny reclamation of the substantially or fully encumbered goods, but to then require the seller to establish the value of its denied reclamation right.[12] *Toshiba Amer., Inc. v. Video King of Ill., Inc. (In re Video King of Ill., Inc.),* 100 B.R. 1008, 1016 (Bankr.N.D.Ill.1989). The Court believes that the statutorily required secured or administrative expense priority claim should be equivalent to the value of the reclamation right lost due to its denial by the bankruptcy court. *In re Shattuc Cable Corp.,* 138 B.R. 557, 564–65 (Bankr. N.D.Ill.1992); *In re Video King,* 100 B.R. 1008, 1016; see *Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.),* 744 F.2d 686, 692 (9th Cir.1984) ("The right to an administrative priority is . . . in lieu of, and not in addition to, any right to reclaim."); *In re Roberts Hardware Co.,* 103 B.R. 396, 398 (Bankr.N.D.N.Y.1988) (citing *Coast* ); *In re Shattuc,* 138 B.R. 557, 561 (Section "546(c) does not enlarge or create any additional right of reclamation but merely allows the seller to assert its rights under other applicable law and provides that the debtor may keep and use the goods despite such rights as long as the court gives some assurance of payment for the reclamation claim to the seller.") (citing *American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group),* 67 B.R. 71 (Bankr.N.D.Ill.1986), *rev'd,* 74 B.R. 250 (N.D.Ill.1987)). Requiring the seller to prove the value of its lost right squarely places with the seller the burden of convincing the court what, if anything, it has lost.[13] If the seller cannot credibly show that its right of reclamation is other than valueless, reclamation may be denied and the seller may be granted a secured or administrative priority claim of nominal or no value.[14]

11. The debtor would get a reduction in the amount of secured claims against the estate, and the seller would be allowed to file an unsecured claim for the amount it paid to release the lien debtor put upon the goods.

12. This third solution gives a court latitude to deny reclamation of substantially or fully encumbered goods, for any reason. The court then lays the burden of establishing the value of the denied right of reclamation upon the seller. If and how the goods are disposed of thereafter, by the court or a trustee or otherwise, is immaterial.

13. Were Plaintiff in the case at bar to consider this issue much time and resources would have been saved.

14. In *Video King,* the court dealt with this issue by employing a two-step analysis under which the seller was required to demonstrate it held a valid right of reclamation and the value of that right. 100 B.R. at 1016 (discussed in *Shattuc,* 138 B.R. at 564). "Compensating [the sellers] for a valueless reclamation right is, in effect, to distribute the same goods twice." *Id.* 100 B.R. at 1017.

If it is established that there would be value, for whatever reason, to an apparently value-less reclamation right, the resulting secured or administrative claim should be of commensurate value. *In re Video King*, 100 B.R. at 1016 (The reclaiming sellers "should be allowed a lien or an administration claim only to the extent necessary to compensate them for the damages suffered from this court's denial of their right to reclaim."). The seller should then have an unsecured non-priority claim for the amount due from its sale of the goods to the debtor, less the amount of the administrative or secured claim.

One last comment on solutions two and three. Under the second solution, the court denies reclamation then liquidates the goods. The court then uses the reclamation value analysis proposed under solution three to determine the amount of the 546(c)(2) claim. The seller's burden would be to establish how much it would have received if seller, instead of the court, resold the goods after reclamation. This right to reclaim and resell the goods for more than the court received from the liquidation sale was denied to the seller. The value of this right equals the amount seller establishes that it would have received, less what the court did receive. This, then, is the amount of the secured or administrative claim. The amount seller stood to receive from the sale of the goods to the debtor, less this elevated claim, and less the amount received by seller from the court's liquidation sale, if anything, is the amount of the remaining unsecured claim. The elevated claim added to the unsecured claim and the amount received after the liquidation sale must be equal to the amount for which seller originally sold the goods.

## CONCLUSION

 In the instant case, the goods have been sold and converted to the Proceeds. The first solution is not available, consequently. Prior to the Court's sale of the pharmaceutical goods, reclamation was (in effect) denied. Seller lost its right to reclaim and resell, which makes this case similar to one under solution two.

Seller agreed, however, to the value of the pharmaceutics Debtor held at the time it asserted reclamation. It cannot now seek to establish that the value is otherwise. The Court holds that Plaintiff/seller has lost no value from denial of reclamation since it was not argued that the value of the goods was more than that realized from the Court's sale. The resulting elevated claim under section 546(c)(2) is zero and Plaintiff's entire claim is unsecured and non-priority.

For all the reasons set forth, Debtor is authorized and directed to tender to Congress an amount sufficient to satisfy Congress's secured claims against the estate, such tender not to exceed the value of the property remaining in the estate. The Court is aware that Congress's claims will not be satisfied in full by this tender. Consequently, all other creditors will remain unpaid.

Therefore, the Court holds that: (1) Plaintiff holds a **VALID** right of reclamation, the subject of which is the pharmaceutics it delivered to Debtor on credit; (2) this reclamation right is **SUBJECT** to Congress's security interest as a good faith purchaser for value; (3) Plaintiff's right of reclamation was denied when the pharmaceutics were sold; (4) this right of reclamation was the right to reclaim goods fully encumbered by liens and the right was valueless; (5) Plaintiff's resulting secured or administrative expense priority claim must accordingly be valueless; (6) Debtor is authorized and **DIRECTED** to tender to Congress an amount sufficient to satisfy its claims against the estate, such tender not to exceed the value of the property remaining in the estate, and such tender to be made so as to be actually received by Congress on or before March 31, 1994; (7) all other requests for relief by Plaintiff are **DENIED**; (8) Congress is directed to furnish an **ACCOUNTING** of the amount and extent of the satisfaction and release, if any, of its lien, to the Court, Debtor and Plaintiff, so as to be actually filed and received on or before April 22, 1994; and (9) Debtor's Cross-motion for summary judgment is **GRANTED** and Plaintiff's Adversary Proceeding is **DISMISSED** and to be **CLOSED** by the Clerk's Office.

**SO ORDERED, DECREED AND ADJUDGED.**