**BINDLEY WESTERN INDUSTRIES,**
Appellant,

v.

**RELIABLE DRUG STORES, INC.,** Drug Fair, Inc., H.A. Woods Drug Company, Midwest Reliable, Inc., PDI of Indiana, Inc., Reliable Illinois, Inc., Acadia Partners, O.P., Bank of America National Trust and Savings Association as Agent for "The Banks", Official Creditors' Committee, Roger L. Grass, Enio A. Montini, Jr., John Foster, Lawrence Hruska, Billy R. Masters, Paul McGurr, David Cole Hershel Workman, Paul Piontkowski, Robert M. Ling, Jr., Appellees.

In re RELIABLE DRUG STORES, INC., et al., Debtors.

No. IP 93–1659 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 7, 1995.

---

James M. Carr, David V. Ceryak, Baker & Daniels, Indianapolis, IN, for appellant.

Steven H. Ancel, Paul T. Deignan, Ancel & Dunlap, Indianapolis, IN, Alan Kornberg, Andrew N. Rosenberg, Paul Weiss Rifkind Wharton & Garrison, New York City, Daniel M. Pelliccioni, Katten Muchin Zavis & Weitzman, Los Angeles, CA, Thomas C. Scherer, Bingham Summers Welsh & Spilman, Indianapolis, IN, Stuart E. Hertzberg Pepper Hamilton & Scheetz, Detroit, MI, for appellees.

## ENTRY

BARKER, Chief Judge.

Bindley Western Industries, Inc. ("Bindley") appeals the Bankruptcy Court's Order Confirming Plan ("Confirmation Order") entered on December 10, 1993, in which the Bankruptcy Court held that Bindley was not entitled to an administrative expense claim because the liens held by the Banks and Acadia had priority over Bindley's reclamation claim. Because the Court finds that any administrative claim to which the reclaiming creditors are entitled is without value, the Court affirms the judgment of the Bankruptcy Court.

## I. BACKGROUND

Appellees are a group of banks which made loans to Reliable Drug Stores ("Reliable") and its related entities ("Debtors") and held security interests against Reliable's inventory. Appellant Bindley, a distributor of over-the-counter and prescription pharmaceuticals and related goods, sold substantial amounts of those goods to Reliable on credit before December 9, 1992 (the "Petition Date"), the date Debtors commenced their Chapter 11 cases. Several months later, Reliable began liquidating its assets, which were reduced to cash or cash equivalents by the time Debtors proposed their Second Amended Plan of Liquidation ("Liquidation Plan") on November 5, 1993.

Bindley claims that it possessed the right under Ind.Code § 26–1–2–702[1] to reclaim

---

**1.** Ind.Code § 26–1–2–702 provides in relevant part:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made

goods that it sold to Reliable on credit shortly before the Petition Date while Reliable was insolvent and made a written demand on Reliable for reclamation of the goods on December 2, 1992. On the Petition Date, Bindley commenced an adversary proceeding against Reliable to enforce its alleged reclamation rights. At a hearing held on December 11, 1992, the Bankruptcy Court determined that Bindley was provisionally entitled to an administrative priority expense claim to the extent of the amount owing to Bindley on account of the goods delivered to Reliable prior to bankruptcy and still in Reliable's possession on December 9, 1992. However, the court declined to determine whether Bindley was entitled to a valid reclamation claim under 11 U.S.C. § 546(c)[2]. On September 9, 1993, Bindley filed a request for allowance and payment of an administrative priority claim based on its reclamation rights and the Bankruptcy Court's December 11, 1992, Order.

Subsequently, at a hearing regarding confirmation of the Liquidation Plan, the Bankruptcy Court addressed whether Bindley was entitled to an administrative priority claim. The Court found that the Banks and Acadia were substantially undersecured in that they were owed approximately $79 million (prepetition), and the total proceeds available to pay all claims was around $63 million. In addition, the court concluded that the Banks and Acadia held valid, perfected, and unavoidable first priority liens in all or mostly all of Reliable's assets. The Bankruptcy Court then concluded that Bindley was not entitled to an administrative claim under 11 U.S.C. §§ 546(c)(2) and 503(b)[3]. The Plan distributed the $63 million and classified Bindley's claim as a Class 2A "reclamation claim."[4] Despite Bindley's timely objection, the Bankruptcy Court confirmed the Plan on December 10, 1993. Bindley now appeals the Bankruptcy Court's Confirmation Order.

## II. DISCUSSION

### A. Standard of Review

The district judge is required to accept the bankruptcy judge's findings on questions of fact as long as they are not clearly erroneous. *See* Fed.R.Bankr.P. 8013; *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029 (7th Cir.1993). "The clearly erroneous standard requires this court to give great deference to the bankruptcy court, the trier of fact. Under this standard, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as trier of fact." *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992) We note, however, that the bankruptcy court's conclusions of law are subject to de novo review on appeal. *Matter of Voelker*, 42 F.3d 1050, 1051 (7th Cir.1994); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *Lehman's Inc. of Anderson v. Hittle*, 163 B.R. 814, 816 (S.D.Ind.1994).

within ten (10) days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three [3] months before delivery the ten-day limitation does not apply....

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under IC 26–1–2–403....

**2.** 11 U.S.C. § 546(c) provides:

Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

**3.** 11 U.S.C. § 503(b) provides for the allowance of claims for administrative expenses, which include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries...."

**4.** The Plan provided for a pool of $150,000.00 to satisfy all reclamation claims.

**B. Is Bindley's Reclamation Right Valid?**

▆▆▆▆ Before a reclaiming creditor can be awarded an alternative remedy of an administrative expense claim, he must first prove that he possessed a right to reclamation. *See In re Mayer Pollock Steel Corp.,* 157 B.R. 952, 961 (Bankr.E.D.Pa.1993). Bindley maintains that the Bankruptcy Court erred in holding that it did not possess a valid right of reclamation. To have a valid reclamation right under § 546(c), Bindley must satisfy the following requirements:

1. The seller sold goods on credit to the debtor in the ordinary course of business of both parties;

2. The seller delivered those goods to the debtor at a time when the debtor was insolvent, as that term is defined by the Bankruptcy Code;

3. Within ten days after the goods were delivered to the debtor, the seller made a written demand for the return of the goods;

4. The debtor had possession of the goods at the time of the reclamation demand or the goods were not in the hands of a buyer in the ordinary course or a good faith purchaser at the time of the demand.

*In re Video King of Illinois, Inc.,* 100 B.R. 1008, 1013–14 (Bankr.N.D.Ill.1989); *In re Adventist Living Centers, Inc.,* 171 B.R. 310, 312 (N.D.Ill.1994); *In re Child World, Inc.,* 145 B.R. 5, 7 (Bankr.S.D.N.Y.1992). In this case, the parties do not dispute that Bindley can meet the above criteria.[5] However, the Bankruptcy Court found that Bindley did not have a valid reclamation right because the secured creditors' liens were superior and undersecured and because Bindley's reclamation right was "subject to" the rights of the Banks and Acadia.

In order to address the merits of the Bankruptcy Court's holding, we must first address the question of whether Bindley's rights are extinguished by the secured creditors' superior liens or merely subordinated to them. The cases which have addressed this issue are divided. Some courts have found that the seller's reclamation interest is extinguished by a secured creditor's claim. *See e.g., In re Shattuc Corp.,* 138 B.R. 557 (Bankr.N.D.Ill.1992) (existence of security interest in inventory extinguished reclamation remedy so that alternative relief of 546(c)(2)(A)–(B) also extinguished); *In re Lawrence Paperboard Corp.,* 52 B.R. 907, 911 (Bankr.D.Mass.1985); *In re FCX, Inc.,* 62 B.R. 315 (Bankr.E.D.N.C.1986) (holding that if the value of the secured creditor's lien exceeds the value of the goods, the seller's rights are cut off).[6] These courts have reasoned that where a reclamation right is valueless outside of bankruptcy (i.e. under state law), it should be equally valueless in bankruptcy. *See In re Video King,* 100 B.R. at 1017.

However, the great weight of the authority holds that a seller's reclamation right is only "subject to" existing security interests, not extinguished. *See e.g., In re Pester Refining Co.,* 964 F.2d 842, 846 (8th Cir.1992) ("In the UCC context, when the right to reclaim is 'subject to' the rights of secured creditors, that means the right is subordinate or inferior to the security interests, not that it is automatically and totally extinguished."); *Matter of Bosler Supply Group,* 74 B.R. 250 (N.D.Ill.1987) (reclamation right only "subject to" existing security interest and not extinguished); *Matter of Sunstate Dairy & Food Products,* 145 B.R. 341 (Bankr. M.D.Fla.1992); *In re Marko Electronics,* 145 B.R. 25 (Bankr.N.D.Ohio 1992); *In re Diversified Food Service Distributors,* 130 B.R. 427 (Bankr.S.D.N.Y.1991); *In re Roberts Hardware,* 103 B.R. 396 (Bankr.N.D.N.Y. 1988).

Bindley, relying on the holdings of the majority cases, contends that because its rec-

---

**5.** Bindley does note that it has not yet presented evidence on the elements for reclamation under UCC § 2–702(2) and Section 546(c). *See* Reply Brief of Appellant Bindley Western Industries, Inc., at 10.

**6.** The Court acknowledges Appellant's argument that *In re FCX, Inc.* does not stand for the proposition that the reclaiming sellers' rights are extinguished; however, as will be explained *infra,* the cutting off of the seller's rights when the secured creditor's lien exceeds the value of the goods leads to the same result as if the seller's rights were extinguished.

lamation right was not extinguished, but merely subordinated, the Bankruptcy Court erred in holding that no valid reclamation right existed and should have provided alternative relief in the form of a lien or an administrative claim under § 546(c).[7] Appellant argues that should this Court find that Bindley had a valid reclamation right, it is bound by the Bankruptcy Court's December 11, 1992, Order, which states in relevant part that:

> In lieu of Bindley's request for reclamation of the Post–Petition Goods and a preliminary injunction restraining Reliable from selling the Post–Petition Goods, Bindley is hereby granted an administrative expense claim as follows: To the extent of the amount owing to Bindley by Reliable on account of Reliable's credit purchase of the Post–Petition Goods, and **it is hereafter determined** that Bindley has a valid reclamation claim under Section 546(c) of the Bankruptcy Code as to the Post–Petition Goods, Bindley shall hold an administrative expense claim allowable under § 503(b) of the Bankruptcy Code.... (emphasis added).

December 11th Order, p. 2 ¶ 1. The Bankruptcy Court further determined that the value of Bindley's administrative expense claim is $735,936.00, the amount of the sale price for the reclamation goods.

The Court finds persuasive those cases which hold that the secured creditor's lien does not extinguish but merely subordinates the reclaiming creditor's rights. First, the plain language of Ind.Code § 26–1–2–702(3) makes the seller's reclamation right "subject to" the rights of a good faith purchaser or lien creditor and makes no mention of extinguishment. Second, as noted above, most cases have concluded that the reclaiming seller's rights are not extinguished by a secured creditor's superior lien. Third, extinguishing the reclaiming creditor's liens makes no sense where enough funds exist to cover the secured creditor's interests and also pay the administrative claims of a reclaiming creditor whose claim has been denied. Such adminis-

trative claims are only permissible if the seller's rights are subordinated, but not if they are extinguished. Therefore, under the logic of the majority cases, Bindley is entitled to an administrative remedy.

### C. What is the Value of Bindley's Administrative Remedy?

■ While the Court finds that Bindley's reclamation rights were not extinguished and that Bindley is entitled to an administrative remedy, it respectfully disagrees with Bindley's contention that it is bound by the December 11, 1992, Order of the Bankruptcy Court, which found that an administrative expense claim in the amount of $735,936.00 must be awarded. Even in those cases on which Bindley strongly relies, the courts found that where a reclaiming seller's rights is worthless because of a secured lien, the reclamation request is of no value; thus, the alternative remedy of administrative priority is not available. *See Pester Refining*, 964 F.2d at 847; *Matter of Bosler*, 74 B.R. at 254 ("It is true that the ability to exercise [the reclamation right] is cut off because of [secured creditor's] priority, but it does not follow from this that the right itself is extinguished."); *Cf. Matter of Sunstate*, 145 B.R. at 345 (despite the existence of a lien on the reclaimed goods, Section 546(c) gives the seller an administrative expense or lien whenever the seller's reclamation right is denied).

A recent decision with facts almost identical to the case at bar—*In re Blinn Wholesale Drug Co., Inc.*, 164 B.R. 440 (Bankr.E.D.N.Y. 1994)—reconciled the seemingly disparate results of recognizing valid reclamation rights (i.e. concluding that such rights were not extinguished) but not awarding any real administrative remedy. In *In re Blinn*, seller, a company which sold pharmaceuticals to a Chapter 11 debtor, had a valid state law right of reclamation that was subject to a secured creditor's interest in the debtor's present and after-acquired inventory. The bankruptcy court first determined that the reclaiming seller's right to reclaim its goods was fully encumbered by the secured creditor's lien and was therefore valueless. It

---

**7.** As noted above, 11 U.S.C. § 546(c)(2) requires that a court grant a seller who has been denied reclamation and who has complied with the re-

quirements of § 546(c) either: 1) an administrative priority claim under 11 U.S.C. § 503(b), or 2) a claim secured by a lien.

then reasoned that because the seller's reclamation right had been denied, it was entitled to an administrative priority claim. However, because the value of the reclamation right was zero, the court held that the administrative priority claim also had a value of zero. *See also In re Video King,* 100 B.R. at 1017 (Bankr.N.D.Ill.1989) (where reclamation right is valueless outside bankruptcy due to floating inventory lien, right equally valueless in bankruptcy and no right to administrative claim exists).

Based on the reasoning of *In re Blinn,* the Court finds that Bindley has a valid reclamation right and is therefore entitled to an administrative priority claim because its reclamation right, was denied by the bankruptcy court. However, the administrative priority claim is valueless because the reclamation right for which it substituted had no value in light of the secured creditors' superior liens, which were undersecured. Had there been enough money to pay all of the secured creditors' loans, an administrative remedy would have been appropriate for Bindley. Our conclusion, therefore, differs from the bankruptcy court, which had based its denial of an administrative claim on Bindley's not having a valid right of reclamation. The Court also rejects Appellant's contention that any finding that Bindley has a valid reclamation right automatically entitles it to administrative expenses in the determined amounts under the Bankruptcy Court's December 11, 1992, Order.[8] Our holding is bolstered by the general principle that results under bankruptcy law should not diverge from results under state law. *See Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.") (citations omitted); *In re FCX, Inc.,* 62 B.R. 315, 322 (Bankr.E.D.N.C.1986) (§ 546(c) should not

be used to give seller greater rights than were available under state law); *Boston and Maine Corp. v. Chicago Pacific Corp.,* 785 F.2d 562, 566 (7th Cir.1986).

Having found that Bindley's administrative claim's value was zero, the Court finds that the existing distribution of the plan should be left undisturbed and that the plan as confirmed satisfied the requirements of § 1129(a) and (b) for confirmation.

### III. CONCLUSION

The Court holds that Bindley has a valid right of reclamation subject to Appellees' security interest. The Court further finds that the Bankruptcy Court's conclusion that Bindley was not entitled to an administrative claim does not differ in result from the Court's holding that the administrative claim to which Bindley is entitled is valueless. Accordingly, it affirms the judgment of the Bankruptcy Court in confirming Debtors' Plan.

It is so ORDERED.

---

8. One way of reconciling the Bankruptcy Court's December 11th Order with our awarding no money to Bindley is to construe what the Bankruptcy Court meant by the term—"valid reclamation claim". Most likely, the Bankruptcy Court equated a "valid reclamation claim" with a claim that was not valueless because of the existence of superior liens and because of a sufficient pool of money. In essence, our finding that Bindley's reclamation claim has no value and is therefore not entitled to administrative priority would be the same as the Bankruptcy Court's finding that no "valid reclamation claim" existed.